No. 04-074

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 304

IN THE MATTER OF M.B., J.B.
and W.B.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DN 2001-03,
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Brian C. Smith, Worden Thane P.C., Missoula, Montana

    For Respondent:

        Honorable Mike McGrath, Attorney General; John Paulson, Assistant
Attorney General, Helena, Montana

        Kathleen Jenks, Department of Public Health and Human Services,
Missoula, Montana

        Larry Mansch, McLaverty & Associates, Missoula, Montana
(Guardian ad Litem)

Submitted on Briefs:   June 1, 2004

Decided:   November 4,
2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     S. B. and D. B. ("Appellants") appeal the judgment of the Twenty-First Judicial District Court, Ravalli County, which terminated their parental rights to their children M. B., J. B., and W. B., and awarded permanent legal custody of these children to the Montana Department of Public Health and Human Services (hereinafter, "the Department"), together with the right to consent to their adoption.  We affirm.

¶2     We address the following issues on appeal:

¶3     1.  Did the District Court abuse its discretion when it terminated the mother's parental rights to all three children?

¶4     2.  Did the District Court abuse its discretion when it terminated both the mother's and father's parental rights to W. B.?

¶5     3.  Did the District Court err by failing to approve a second treatment plan for the mother?

¶6     4.  Did the District Court err with regard to the father's treatment plan?

¶7     5.  Did the District Court err in finding that the social worker did not have a conflict of interest with the mother such as to warrant reversal?

FACTUAL AND PROCEDURAL BACKGROUND

¶8     M. B., and J. B., the two minor daughters of S. B. and D. B., and W. B., their minor son, were removed by the Department from the family home on March 23, 2001.  The Department took this action after receiving a report that S. B., the children's natural father,

had been arrested pursuant to an affidavit-supported bench warrant which alleged that he had committed felony incest against his four daughters, including M. B. and J. B.

¶9    On October 10, 2001, S. B. pled guilty to four counts of felony incest–one count as to each of his daughters–and was sentenced on December 31, 2001, to 40 years in prison, with 20 years suspended.  S. B. later appealed his sentence, though not his guilty plea or his conviction, to this Court.  We affirmed.[1]

¶10    The Department ultimately petitioned for permanent legal custody of the minor children, and termination of Appellants' rights to them, on February 3, 2003.  By Order dated June 2, 2003, the District Court granted the Department's petition.  S. B. and D. B. appeal therefrom.

STANDARD OF REVIEW

¶11    A district court's decision to terminate parental rights is discretionary, and we review that decision to determine whether the court abused its discretion. *In re J. W.,* 2001 MT 86, ¶ 7, 305 Mont. 149, ¶ 7, 23 P.3d 916, ¶ 7.  In reviewing a decision to terminate parental rights, we determine whether the district court's findings of fact supporting termination are clearly erroneous and whether the district court's conclusions of law are correct. *In re C. B.,* 2001 MT 42, ¶ 6, 304 Mont. 252, ¶ 6, 20 P.3d 117, ¶ 6.  A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite

---

[1] Because providing the citation to the opinion which affirmed S. B.'s sentence would reveal the surname of the family involved in the present case, we refrain. *See* Section VII, ¶ 10, Montana Supreme Court Internal Operating Rules (1996).

3

and firm conviction that the district court made a mistake. *In re J. N.*, 1999 MT 64, ¶ 11, 293 Mont. 524, ¶ 11, 977 P.2d 317, ¶ 11.

¶12 Moreover, it is well established that in reviewing a district court's findings, we do not consider whether the evidence could support a different finding; nor do we substitute our judgment for that of the fact-finder regarding the weight given to the evidence. *In re L. S.*, 2003 MT 12, ¶ 10, 314 Mont. 42, ¶ 10, 63 P.3d 497, ¶ 10 (citation omitted).

¶13 This Court has stated, furthermore, that a natural parent's right to care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures. Thus, before terminating an individual's parental rights, a district court must adequately address each applicable statutory requirement. The party seeking to terminate an individual's parental rights has the burden of proving by clear and convincing evidence that the statutory criteria for termination have been met. *In re J. N.*, ¶ 12.

DISCUSSION

¶14 ***1. Did the District Court abuse its discretion when it terminated the mother's parental rights to all three children?***

¶15 The Appellants argue that M. B., J. B., and W.B. were never properly adjudicated to be youths in need of care, a pre-requisite for termination of parental rights. We disagree.

¶16 Section 41-3-609(1), MCA, authorizes a district court to order a termination of the parent-child legal relationship upon a finding, established by clear and convincing evidence, that circumstances exist as set forth in any of several subsections. The District Court terminated D. B.'s parental rights to all three children based on subsection (f):

4

       (f) the child is an adjudicated youth in need of care and both of the following exist:

       (i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and

       (ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time.

Section 41-3-609(1)(f), MCA. Thus, proof by clear and convincing evidence that the child was previously adjudicated a youth in need of care is a statutory precondition for terminating parental rights to the child under the statute. *See In re J.N.*, ¶ 12. "The adjudication of a child as a youth in need of care is a threshold requirement without which a court may not . . . terminate a person's parental rights under the statute." *In re B.N.Y.*, 2003 MT 241, ¶ 22, 317 Mont. 291, ¶ 22, 77 P.3d 189, ¶ 22.

¶17    Section 41-3-437, MCA, provides that a child's adjudication as a youth in need of care may occur upon a hearing in which the court determines the same by a preponderance of the evidence. *See* § 41-3-437(2), MCA; *In re A.M.,* 2001 MT 60, ¶¶ 44-45, 304 Mont. 379, ¶¶ 44-45, 22 P.3d 185, ¶¶ 44-45 (evidentiary standard for adjudication of child as youth in need of care different from the ultimate standard applied in parental termination cases).[2] Such a hearing apparently did not occur in the present case. This Court has, however, recognized that the parents' stipulation that a child is a youth in need of care, when filed with

---

[2] Appellants insist that § 41-3-609(1)(f), MCA, establishes the clear-and-convincing evidentiary standard for adjudicating children to be youths in need of care as a precondition for terminating parental rights. This assertion is erroneous. Rather, the statute in question requires clear and convincing evidence that the child *has been adjudicated* a youth in need of care. This standard can be met by simply introducing the adjudication order, or by moving the district court to take judicial notice of its prior ruling. Section 41-3-437(2), MCA, provides the evidentiary standard for the prior adjudication: preponderance of the evidence. *See In re A.M.*, ¶¶ 44-45.

the district court, may be treated as an adjudication for the purposes of § 41-3-437, MCA, and, therefore, may suffice for purposes of terminating parental rights pursuant to § 41-3-609, MCA, although it should be "closely scrutinized." *In re Custody of M. W.*, 2001 MT 178, ¶ 47, 305 Mont. 80, ¶ 47, 23 P.3d 206, ¶ 47. Further, the 2001 Legislature enacted § 41-3-434(1), MCA, which authorizes a parent to stipulate that a child is a youth in need of care by a preponderance of the evidence.

¶18 The record herein reflects that Appellants twice stipulated that all three of their minor children were youths in need of care. First was the Stipulation to Temporary Legal Custody, filed on November 13, 2001, which was signed by, among others, both Appellants and their attorney. Appellants acknowledged therein that M. B., J. B., and W. B. were all youths in need of care. The District Court found therefrom that the minor children were youths in need of care and granted the Department's request for temporary legal custody by its order of December 19, 2001. Appellants again so stipulated in the Stipulation to Extension of Temporary Legal Custody, filed October 23, 2002. ("The children named above have been previously adjudicated Youths in Need of Care. . . . The parents . . . stipulate and agree that . . . the State could prove by a preponderance of the evidence that the children . . . continue to beYouths in need of care.") This latter stipulation set forth the evidentiary basis for such an adjudication in considerable detail. D. B. and her attorney signed this document, and though S. B. did not sign it, he agreed through his counsel in open court to the stipulation.

¶19     On the basis of these stipulations, § 41-3-434(1), MCA, and our holding in *Custody of M.W.*, we conclude that the District Court properly adjudicated the minor children to be youths in need of care.

¶20     Appellants next argue that the District Court clearly erred in finding that D. B., the natural mother, did not successfully complete her treatment plan. We disagree.

¶21     The Department presented D. B. with a treatment plan on November 13, 2001, and on December 19, 2001, the District Court ordered D. B. to complete the treatment plan. The plan stated its ultimate goal was "to reunite [D. B.] with her children and for [D. B.] to demonstrate her ability to believe her children and protect them." The treatment plan identified three "problems" related to D. B.'s ability to provide emotional care and support to her children and otherwise to parent them in a manner conducive to their overall health and well-being. Each problem was accompanied by a "goal," which set forth the general criterion for success in addressing the problem, together with a series of specific "client objectives" for meeting each goal.

¶22     The District Court found that D. B. had failed to meet many of her objectives. For example, the treatment plan's Problem 1 states that D. B., having endured sexual molestation during her own childhood and having never received treatment for it, tended to minimize the effect such abuse had had on herself. Consequently, she was unable to empathize with and protect her own daughters when the eldest revealed to her the sexual abuse being perpetrated against them by S. B., some two years before the Department filed its first petition in this matter. The goal which the treatment plan prescribed for D. B. in this regard was that she

understand how being sexually abused had affected her ability to parent and to protect her children, and that she demonstrate empathy and appropriate care for her children regarding their sexual abuse issues.

¶23 Citing the collective testimony of the witnesses presented at the termination hearing, documentary evidence, and information contained in the court file, the District Court found that D. B. had clearly failed to achieve this goal. The children's therapist, Laurie Bogart, testified that D. B. was disruptive and antagonistic in the two Department-sponsored meetings with her children, and failed to demonstrate empathy for, or understanding of, their suffering. Furthermore, D. B. often appeared skeptical in these meetings about her children's truthfulness regarding the abuse. As a result, D. B.'s therapist, Billie Nelson, continually had to redirect their interactions down less volatile paths. The Department's social worker, Amy Rau, testified that in group therapy sessions D. B. made excuses for her husband's behavior towards her daughters, and that she continued to express doubts about the abuse. The District Court found that, taken together, these facts clearly indicated that D. B. had failed to achieve an empathetic understanding of her children's needs in the wake of their abuse at her husband's hands, the crucial objective of D. B.'s treatment plan, and we conclude that the District Court did not clearly err in making this determination.

¶24 Appellants further argue that the District Court clearly erred in finding that D. B. was unable to change her condition within a reasonable time. We disagree.

¶25 As we previously noted, the District Court terminated D. B.'s parental rights to her children pursuant to § 41-3-609(1)(f), MCA. This subsection requires a finding, not only (i)

8

that the natural parent in question has not successfully completed her treatment plan, but also (ii) that the conduct or condition which renders the natural parent unfit is unlikely to change within a reasonable time. For making this latter determination, § 41-3-609(2), MCA, provides guidance in the form of a non-exhaustive list of considerations. Among these is the natural parent's emotional illness, mental illness, or mental deficiency, of such a duration or nature as to render the parent unlikely to care for the continuing physical, mental, and emotional needs of the child within a reasonable time. Section 41-3-609(2)(a), MCA.

¶26 The District Court referred in its factual findings to Dr. Paul Moomaw's diagnosis that D. B. was suffering from paranoid personality disorder. At the termination hearing, D. B.'s therapist, Ms. Nelson, testified that she disagreed with this diagnosis, preferring one of post-traumatic stress disorder (PTSD) precipitated by the removal of the children from the family home. In response to questioning from the District Court, however, Ms. Nelson conceded that D. B. did not meet the criteria for a PTSD diagnosis, and that D. B.'s condition was consistent with paranoid personality disorder, a mental illness which is extremely resistant to treatment.

¶27 The District Court also cited what it termed D. B.'s long history of disregarding her children's needs, her exposure of the children to unreasonable risk, and her failure to protect them in determining that D. B. was unlikely to be able to parent her children adequately within a reasonable time. D. B. stipulated to the fact that her eldest daughter had disclosed to D. B. the continuing abuse she was suffering fully two years before the Department filed its initial petition in this case; the young woman herself confirmed this at the termination

9

hearing. Furthermore, the District Court received testimony to the effect that other individuals, to whom D. B. allowed unsupervised access to her children, also had inflicted sexual abuse upon them with impunity. S. B., moreover, testified that he and his wife left the children at home alone for long periods in order to accept construction work in other cities.

¶28 Given this evidence, we conclude that the District Court did not clearly err in finding that D. B.'s unfitness to parent her children would not change within a reasonable time. We therefore hold that, based on its supported statutory findings, the District Court did not abuse its discretion in terminating D. B.'s parental rights to the children at issue in this case.

¶29 *2. Did the District Court abuse its discretion when it terminated both the mother's and the father's parental rights to W. B.?*

¶30 Appellants argue that the evidence regarding the abuse allegedly inflicted on W. B. was insufficient to support the District Court's finding that W.B., in particular, was a youth in need of care. We disagree.

¶31 As noted previously, both S. B. and D. B. stipulated that all their minor children were youths in need of care. Moreover, the District Court found that W. B. had been a secondary victim of the abuse which S. B. inflicted on his sisters. Ms. Bogart, the children's therapist, testified that W. B. suffered anxiety and emotional trauma which originated in his father's abuse of his sisters, manifesting in regressive behavior, insomnia, and night-terrors. Ms. Bogart further opined that the family situation as a whole inhibited W. B.'s normal development in childhood. We have previously held that § 41-3-101, et seq., MCA, grants

10

to the district court the authority to make a determination of neglect and abuse as to all children in a family based on the policy that abuse of one child has a detrimental effect on the other children's development. *See In the Matter of T. Y. K.* (1979), 183 Mont. 91, 95-96, 598 P.2d 593, 595-96 ("a parent does not have the privilege of inflicting brutal treatment upon each of his children in succession before they may individually obtain the protection of the state").

¶32    Thus, on the facts presented by this case, in which the Department has clearly demonstrated the emotional harm which S. B.'s abuse of his daughters was causing his son, we conclude that the District Court did not abuse its discretion in terminating both Appellants' rights to W. B. based on the continuing sexual abuse which his sisters endured.

¶33    ***3. Did the District Court clearly err when it failed to approve a second treatment plan for D. B. after the District Court granted the Department an extension of its temporary legal custody of the children?***

¶34    Appellants argue that, because several deadlines in the original treatment plan had already passed when the District Court extended the Department's temporary legal custody of the children, the District Court erred when it did not likewise extend the original treatment plan's deadlines. We disagree.

¶35    We note, first, that the Department sought an extension of its temporary legal custody on the grounds that Appellants required more time to complete their respective treatment plans, and that Appellants stipulated to this fact in documents supporting the Department's motion. This action was consistent with the statutory preference for resolution of parenting problems and reunification of the family over termination of parental rights, insofar as

11

reunification is in the best interests of the children at issue. *See* §§ 41-3-101 and -102(25), MCA. Secondly, we note that Appellants requested no modification of the treatment plan's deadlines when the Department's extension was granted, and that this issue appears to have been raised for the first time before the District Court at the termination hearing. Third, it is clear from the order which terminated S. B.'s and D. B.'s parental rights that the District Court considered all their efforts to complete their treatment plans, not merely those which preceded the deadlines set forth therein, which appears to have been the intent of the parties in entering the stipulation. After all, the Department's stated reason in petitioning for an extension of its temporary legal custody was to allow Appellants more time to complete their treatment plans. Finally, Appellants have failed to cite any authority whatsoever which would oblige a District Court to modify a treatment plan when a parent has failed to meet its deadlines, as is the case here. We therefore conclude that the District Court did not abuse its discretion by not modifying the treatment plan in the manner advanced by Appellants.

¶36    *4. Did the District Court err with regard to the father's treatment plan?*

¶37    Appellants argue that the District Court erred both in failing to approve the treatment plan which the Department offered to S. B. and in basing its decision to terminate his parental rights on this treatment plan. We disagree.

¶38    The District Court terminated S. B.'s parental rights pursuant to § 41-3-609(1)(f), MCA.[3] As we noted previously, § 41-3-609(1)(f)(i), MCA, requires, in the first instance, "an

_____

[3] Although the District Court stated its belief that S. B.'s parental rights could have been terminated without offering him a treatment plan, presumably under §§ 41-3-609(1)(d) and 41-3-423(2)(a), MCA, regarding the minor daughters, and §§ 41-3-

12

appropriate treatment plan that has been approved by the court." This is precisely what Appellants claim was lacking.

¶39 As a factual matter, their assertion is clearly wrong. The District Court both approved the Department's plan for S. B. prepared by the Department, and ordered him to complete it. Furthermore, S. B. himself stipulated to the fact that the Department had offered him a treatment plan, and confirmed this stipulation in his testimony at the termination hearing. He further testified to the fact that the District Court had ordered him to complete the plan. We thus conclude that the District Court did not clearly err in terminating S. B.'s parental rights based on his failure to comply with the treatment plan.

¶40 ***5. Did the District Court err in finding that the social worker did not have a conflict of interest with the mother such as to warrant reversal?***

¶41 D. B. argues that because the Department's social worker, Amy Rau, was the complaining witness in a criminal complaint against D. B., she had a conflict of interest which impeded D. B. in completing her treatment plan, and which warrants reversal. We disagree.

¶42 The criminal complaint to which D. B. refers arose out of a disturbance which D. B. caused at the Department office. The record reflects that Ms. Rau summoned the police, and was later formally listed as the complaining witness when charges of disorderly conduct and attempted assault were filed against D. B. The District Court found that the restraining order

609(1)(f) and 41-3-609(4)(c), MCA, regarding W. B., the District Court did not base its decision on these statutes. Therefore, we will not address its statement, or Appellants' argument in opposition thereto, in this opinion.

13

which was subsequently issued as a condition of D. B.'s release in this criminal matter forbade her from going to the Department's Hamilton office without the prior consent of the municipal court, but did not impede her ability to progress in her treatment plan. This finding is not challenged by Appellants on appeal. Given that D. B.'s plan did not require her to report to the Department's Hamilton office or prevent her from communicating with Ms. Rau in places or by means other than those proscribed by the restraining order, we conclude that the District Court did not clearly err in finding no conflict of interest between Ms. Rau and D. B. arising out of this matter.

¶43    For the foregoing reasons, we affirm.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER