DA 13-0225

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 366

IN THE MATTER OF:

B.J.T.H., and B.H.T.H.,

      Youths in Need of Care.

APPEAL FROM:      District Court of the Third Judicial District,
In and For the County of Anaconda-Deer Lodge, Cause No. DN 11-03; DN 11-04
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

             Jeanne Miller Walker, Hagen & Walker, PLLC; Billings, Montana

      For Appellee:

             Timothy C. Fox, Montana Attorney General; Tammy K Plubell, Assistant Attorney General; Helena, Montana

             Ben Krakowka, Deer Lodge County Attorney; Anaconda, Montana

Submitted on Briefs: November 13, 2013

Decided: December 10, 2013

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 S.H.V.H. (Mother) appeals from an order of the Third Judicial District Court, Deer Lodge County, terminating her parental rights. We affirm in part and remand in part.

## ISSUES

¶2 We restate the issues on appeal as follows:

¶3 *1. Did the District Court err in denying Mother's request to fire her court-appointed counsel?*

¶4 *2. Did the District Court err in accepting Mother's relinquishment?*

¶5 *3. Did the District Court err in denying Mother's motion to modify the treatment plan and stay the termination hearing?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 Mother and R.F. (Father) are the parents of B.H.T.H. and B.J.T.H., twins born in July 2009. The Montana Department of Public Health and Human Services (DPHHS) removed B.H.T.H. and B.J.T.H. from Mother's home in Anaconda on January 28, 2011, after receiving a referral regarding an ongoing situation at Mother's house. In an affidavit requesting emergency protective services and temporary legal custody, the DPHHS Child Protection Specialist identified several grounds for B.H.T.H. and B.J.T.H.'s removal, including: Mother's erratic behavior on January 28, 2011, leading to her incarceration and arrest for misdemeanor assault; Mother's use of inappropriate caregivers; Mother's rejection of the family support that had been offered; and disarray and unsafe conditions in the home, including dirty dishes, a dirty diaper on the floor,

2

clothing blocking the hallway and stairway, broken high chairs covered in moldy food, and no baby gate to block the stairs.

¶7 The District Court entered orders adjudicating B.J.T.H. and B.H.T.H. as youths in need of care on February 18, 2011. DPHHS prepared treatment plans for the parents, which the District Court approved on March 9, 2011. The children were initially placed with their maternal grandfather. After a March 18, 2011 Family Group Decision Making Meeting, they were placed with their maternal great-aunt and great-uncle. On August 12, 2011, the District Court issued orders granting the extension of temporary legal custody to give Mother additional time to complete her treatment plan.[1]

¶8 On February 1, 2012, the District Court approved DPHHS's permanency plan seeking termination of Mother's parental rights. The court found that DPHHS had made many efforts to reunify, and that Mother had not made any real progress on her treatment plan. The court noted it would consider a petition for further extension of temporary legal custody if Mother progressed with her treatment plan.

¶9 On March 16, 2012, Father relinquished his parental rights. In the spring of 2012, Mother completed in-patient treatment at Rimrock Foundation in Billings, Montana. On June 20, 2012, Mother's counsel made a motion for an emergency hearing because Mother had been accepted into the Carole A. Graham Home (Home) in Missoula, Montana, for treatment in a supervised setting with her children. Her bed date was scheduled for June 22, 2012, and pursuant to the Home's policy, her children were

---

[1] The court ultimately extended temporary legal custody through September 2012.

required to join her no later than July 6, 2012. At the conclusion of the June 21, 2012 hearing, and after receiving testimony on the proposed Home placement, the District Court denied Mother's motion to amend the treatment plan and to stay the termination proceeding.

¶10 On September 5, 2012, the District Court was scheduled to hold a hearing on DPPHS's petition for termination of parental rights. As the hearing began, Mother addressed the District Court, asking for permission to speak. The District Court told her: "No, you tell your lawyer. Then he'll tell me. Sit down." Mother's attorney informed the District Court that Mother wanted to fire him. The court asked if Mother had hired another attorney, which she had not. The court then told her she had "an excellent lawyer," and "[t]here's no reason apparent to the [c]ourt for you to fire him." After denying Mother's request to fire her attorney, the court gave Mother's attorney the opportunity to visit with Mother about voluntary relinquishment. After a thirty minute recess in which Mother conferred with her attorney and family members, the court reconvened, and Mother signed an affidavit of relinquishment for each child. Mother immediately exited the courtroom and was obviously emotionally distraught. On September 12, 2012, the District Court issued orders terminating Mother's parent-child relationship with B.H.T.H. and B.J.T.H. and awarded permanent legal custody of the children to DPHHS. The District Court stated in the order that Mother had received three hours of relinquishment counseling.

¶11 Mother contends on appeal that the District Court erred in failing to make an adequate inquiry into her complaints about her counsel and failing to appoint her new counsel. She argues that the *State v. Gallagher*, 1998 MT 70, ¶¶ 14, 15, 288 Mont. 180, 955 P.2d 1371, requirement that a hearing be held if a criminal defendant presents a "seemingly substantial complaint" about the ineffectiveness of her counsel should be extended to dependent and neglect proceedings. Mother further argues that the District Court erred in accepting her relinquishment because her consent was obtained by duress and she was not offered the required three hours of relinquishment counseling. Mother alleges the District Court erred in denying her request to amend the treatment plan and stay the termination hearing because amending the treatment plan would have been a reasonable effort to reunite Mother with her children.

¶12 DPHHS argues that the District Court properly denied Mother's request to fire her attorney because her attorney had provided her with excellent representation and there were no apparent grounds to support her request. According to DPHHS, Mother waived her right to argue on appeal that her relinquishment was involuntary when she did not raise the issue in District Court. DPHHS further argues that the District Court properly denied Mother's request to amend the treatment plan because Mother had declined chemical dependency treatment in the past, and that placing the children in the Home with Mother was not in their best interests.

¶13 In her reply brief, Mother counters that nothing prevents a parent from raising an ineffective assistance of counsel claim at any stage of a youth-in-need-of-care

proceeding, and that she cannot be faulted for remaining silent about her decision to fire her attorney when the District Court specifically told her not to speak. Mother argues that this Court should invoke the plain error doctrine with respect to Mother's claims regarding relinquishment, and that we should excuse Mother's failure to object to the relinquishment at the trial level given the surrounding circumstances. Mother alleges that the relinquishment is defective because the relinquishment affidavit fails to state that Mother received the required counseling, and that the District Court erred in accepting an affidavit that is defective on its face, regardless of a party's failure to object.

**STANDARD OF REVIEW**

¶14    We review a district court's findings of fact in a parental termination case to determine whether the findings in question are clearly erroneous. *In re D.B.*, 2008 MT 272, ¶ 13, 345 Mont. 225, 190 P.3d 1072. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re M.B.*, 2004 MT 304, ¶ 11, 323 Mont. 468, 100 P.3d 1006 (citation omitted). A court's conclusions of law in such a case are reviewed for correctness, and its decision to terminate parental rights is a discretionary ruling reviewed for an abuse of discretion. *In re D.B.*, ¶ 13 (citation omitted).

6

**DISCUSSION**

¶15  *1. Did the District Court err in denying Mother's request to fire her court-appointed counsel?*

¶16  As an initial matter, we decline to apply the *Gallagher* standard to termination proceedings. We have previously distinguished criminal proceedings from termination proceedings and have declined to apply the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), test to termination proceedings. *In re A.S.*, 2004 MT 62, ¶ 23, 320 Mont. 268, 87 P.3d 408. In *In re A.S.*, we held that parents have a right to effective assistance of counsel in termination proceedings. *In re A.S.*, ¶ 20. However, we also noted that the rights and interests are different in termination proceedings than they are in criminal proceedings. In a criminal case, the *Strickland* standards are intended to protect defendants whose rights to effective assistance of counsel flow from the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution, while in termination proceedings, the right to effective assistance derives from the due process clause. *In re A.S.*, ¶¶ 22-23. Moreover, due to the extended involvement of the district court in a dependent-neglect case—from the initial petition for temporary legal custody to the adjudication hearing, approval of treatment plans, and so forth through an actual termination hearing—the district court has a more protracted opportunity to evaluate counsel's effectiveness than does a court in a criminal proceeding, thus obviating in most cases the need for a separate hearing. It also bears noting that, though the right to parent a child is a fundamental liberty interest, the best

7

interests of the children are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights. *In re Custody & Parental Rights of D.A.*, 2008 MT 247, ¶¶ 18, 21, 344 Mont. 513, 189 P.3d 631 (internal quotation omitted).

¶17 In *In re A.S.*, we stated that the effectiveness of counsel in these cases should be evaluated by examining factors such as training, experience, and advocacy, thereby allowing a district court to make a qualitative assessment about the adequacy of counsel. *In re A.S.*, ¶ 26. Here, the District Court evaluated the effectiveness of Mother's counsel using these factors. The District Court concluded Mother's attorney was "an excellent lawyer," was "probably the most experienced attorney that would be available for this proceeding," and had done "a good job so far." Moreover, we note that "a parent may not sustain an ineffective assistance of counsel claim when the parent cannot demonstrate prejudice as a result of the ineffective assistance." *In re A.D.B.*, 2013 MT 167, ¶ 64, 370 Mont. 422, 305 P.3d 739. Mother failed to demonstrate any such prejudice. Based on the record before this Court, we conclude the District Court did not clearly err in its assessment that Mother's counsel had adequate training and experience and was a good advocate, and did not err in refusing to terminate the services of Mother's court-appointed counsel.

¶18 *2. Did the District Court err in accepting Mother's relinquishment?*

¶19 We now turn to Mother's request that we set aside her affidavit of relinquishment of parental rights. Section 42-2-410, MCA, provides that a relinquishment may be

8

revoked before a district court has issued an order terminating parental rights. Section 42-2-412(3)(c)(iii), MCA, provides that a relinquishment must state that the individual executing the relinquishment has, "if required, received counseling services pursuant to 42-2-409 explaining the meaning and consequences of an adoption." Section 42-2-409(1)-(2), MCA, requires counseling of the birth mother in department, agency, and direct parental placement adoptions unless the counseling requirement is waived for good cause by a court. "A relinquishment and consent to adopt executed prior to completion of required counseling is void." Section 42-2-409(2), MCA.

¶20    Mother argues that the relinquishment should be revoked despite the fact that the District Court already issued an order terminating parental rights because the relinquishment was void. DPHHS argues Mother should have raised this issue in the District Court, not on appeal, because the District Court could have determined whether or not Mother received the requisite counseling or whether good cause existed to waive the requirement. We conclude that, in light of the language of § 42-2-409(2), MCA, failure to raise this matter in District Court did not constitute waiver. However, we cannot resolve this issue based on the record before us. Though the court's termination order states that Mother signed the relinquishment after receiving three hours of relinquishment counseling, Mother denies having received any counseling, and her affidavit of relinquishment is silent as to this issue. Thus, we remand to the District Court for a determination of whether Mother in fact received the required counseling or whether good cause existed to waive the requirement.

9

¶21    *3. Did the District Court err in denying Mother's request to modify the treatment plan and stay the termination hearing?*

¶22    A treatment plan may be altered, amended, continued, or terminated only with the approval of the parent or parents or guardian pursuant to a stipulation and order, or by order of the court.  Section 41-3-443(4), MCA.  Instead of amending the treatment plan to allow B.H.T.H. and B.J.T.H. to go to the Home with Mother, the District Court elected to retain the existing treatment plan and proceed with the termination hearing.  The District Court, considering the best interests of the children, concluded that the chances of reunification were unknown, but that there was a "quantum of proof that it would be harmful to the children" to be placed in the Home.  The Child Protection Specialist and children's pediatrician testified that the children were doing well in their placement.  The pediatrician suggested visits with Mother be limited, and the Child Protection Specialist argued the children needed to stay in their current placement to avoid any health issues.  The District Court's determination that not amending the treatment plan was in the children's best interest was supported by substantial evidence; thus, we conclude the District Court did not err in denying Mother's motions.

## CONCLUSION

¶23    For the foregoing reasons, we affirm in part and remand in part.

/S/ PATRICIA COTTER

10

We concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT