DA 22-0086

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 208N

IN THE MATTER OF:

R.K. and R.K.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Toole, Cause Nos. DN 19-6 and DN 19-7
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Taryn Gray, Hathaway Law Group, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

      Merle Raph, Toole County Attorney, Jennifer Stutz, Deputy County
Attorney, Shelby, Montana

Submitted on Briefs:  September 28, 2022

Decided:  October 18, 2022

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 S.M.K. (Father) appeals an order from the Ninth Judicial District Court appointing permanent guardians to Father's two children, R.K. and R.K. We affirm.

¶3 On May 14, 2019, the Montana Department of Public Health and Human Services (Department) removed the children from Father and H.S. (Mother) due to concerns of parental neglect by Mother, substance abuse by Father, and domestic violence. On June 6, 2019, Father, accompanied by counsel, stipulated to the adjudication of his children as Youth in Need of Care (YINC) and to Temporary Legal Custody (TLC). R.K. and R.K. were placed with their maternal grandparents. On July 11, 2019, the District Court approved a Treatment Plan signed by Father. The Treatment Plan required Father to complete mental health tasks, attend supervised and unsupervised visits, follow recommendations provided by professionals working with his children, and adhere to regular chemical dependency testing.

¶4 On January 15, 2020, the Department filed a Petition for the Extension of Temporary Legal Custody under which the children were to remain with their maternal grandparents. Father had not made meaningful progress on his treatment plan at this point.

On February 6, 2020, a Stipulation to Extension of Temporary Legal Custody was filed and signed by all attorneys in the case. On February 18, 2020, the District Court granted the Extension of Temporary Legal Custody—noting in its order that neither Father nor his attorney were present at the hearing.

¶5 On May 18, 2020, following the Department's recommendation, the District Court issued an order approving the permanency plan of reunification. On December 1, 2020, the Department responded to Father's limited contact with the Department and failure to complete chemical dependency and mental health evaluations by filing a Petition for Termination of Parental Rights and Permanent Legal Custody (PTR). The court issued an order setting a hearing.

¶6 On June 10, 2021, during the pendency of the PTR—which was protracted because of several continuances, including one made by Father's counsel, Father and Mother jointly e-mailed the District Court about allegedly inadequate communication from their respective counsel as well as shortcomings by their assigned child protection specialist (CPS) and the assigned court appointed special advocate. On June 11, 2021, the District Court notified the parties of ex parte communication by Father and Mother.

¶7 On July 20, 2021, the Department, after determining that further efforts at reunification with Father and Mother would not advance the best interests of the children, filed a Petition for Appointments of Guardians. On September 9, 2021, the day before the guardianship hearing, Father and Mother again jointly e-mailed the District Court raising concerns about their respective attorneys and CPS; they requested new counsel on the basis

that their current attorneys were not adequately advancing their interests nor apprising them of updates in their case.

¶8 On September 10, 2021, during the guardianship hearing, the District Court notified the parties that Father and Mother made the ex parte communication. The District Court declined to appoint new counsel and reminded both parents that they had the right to hire their own attorneys if they were not satisfied with their current representation. The presiding judge recused himself citing specific facts regarding the case that Father and Mother had disclosed in their e-mails to the court. On October 6, 2021, the Honorable Brenda R. Gilbert assumed jurisdiction over the matter.

¶9 On November 22, 2021, the Department filed a Supplemental Affidavit reporting that since February 2021 Father and Mother had attended their scheduled supervised visitations and engaged in drug testing; however, they had not engaged in joint counseling since September 2021 and Father had not engaged in individual counseling since June 2021. The affidavit also noted that Father's drug tests were positive.

¶10 The parties reached a settlement and, on December 8, 2021, the District Court conducted a hearing where Father and Mother agreed to the guardianship. The court granted the petition pending consultation with R.K. and R.K.

¶11 On appeal, Father alleges that the absence of fundamentally fair procedures prejudiced him in these proceedings. He argues that trial courts must conduct a *Gallagher* inquiry when a party to a dependent neglect proceeding raises complaints about the adequacy of their counsel and asserts that the District Court's failure to investigate his

4

claims of ineffective assistance of counsel was a manifest miscarriage of justice. *State v. Gallagher,* 1998 MT 70, 288 Mont. 180, 955 P.2d 1371.

¶12 Whether a person has been denied his or her right to due process is a question of constitutional law. Our review of questions of constitutional law is plenary. *Schmill v. Liberty Northwest Ins. Corp.*, 2003 MT 80, ¶ 9, 315 Mont. 51, 67 P.3d 290.

¶13 The Montana Constitution protects a natural parent's right to the care and custody of their children. *In re B.H.,* 2020 MT 4, ¶ 36, 398 Mont. 275, 456 P.3d 233. The State must provide parents with fundamentally fair procedures when it moves to intervene in a family for the protection of a child. *In re B.H.,* ¶ 37. When a parent has their parental rights terminated in a proceeding where appointed counsel failed to render effective assistance, a claim for ineffective assistance of counsel is the only meaningful redress. *In re A.S.*, 2004 MT 62, ¶ 16, 320 Mont. 268, 87 P.3d 408.

¶14 The requirement we established in *Gallagher*—that a hearing be held if a criminal defendant presents a "seemingly substantial complaint" about the ineffectiveness of her counsel—does not apply in dependent neglect proceedings. *In re B.J.T.H.*, 2013 MT 366, ¶ 11, 373 Mont. 85, 314 P.3d 911. Dependent neglect cases are civil proceedings. The protections afforded to parties in dependent neglect proceedings as well as the sources of those protections differ from criminal proceedings. *In re B.J.T.H.*, ¶ 16. Title 41, MCA, requires numerous hearings and direct court engagement in each case. That extensive opportunity afforded to trial courts to evaluate the effectiveness of a party's counsel in dependent neglect proceedings undermines the necessity of a separate hearing. *In re B.J.T.H.*, ¶ 16.

¶15 Prior to the second District Court judge assuming jurisdiction, the court had received two ex parte communications from Father and Mother making allegations of poor communication with their respective counsel. We find it unnecessary to address whether the District Court handled the parents' complaints appropriately because claims of ineffective assistance of counsel in dependent neglect proceedings cannot succeed if the parent is unable to demonstrate prejudice as a result of the ineffective assistance. *In re A.D.B.*, 2013 MT 167, ¶ 64, 370 Mont. 422, 305 P.3d 739. The record here does not indicate any such prejudice. Following the arrival of the new District Court judge, no evidence suggests that the effectiveness of Father's counsel would have altered the outcome. By freely assenting to the guardianship, Father agreed to a settlement of the case and has waived his prior ineffective assistance of counsel claims.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE