No. 03-140

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 62

IN THE MATTER OF A.S.,

     Youth in Need of Care.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. CDJ-01-134-Y,
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Lawrence A. LaFountain, Cascade County Public Defender, Great Falls, Montana

     For Respondent:

          Hon. Mike McGrath, Attorney General; Carol E. Schmidt, Assistant Attorney General, Helena, Montana

          Brant S. Light, County Attorney; Mary Ann Ries, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs: January 27, 2004

Decided:   March 16, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 M.S. is the natural mother of A.S. The Department of Public Health and Human Services (DPHHS) filed a petition for termination of M.S.'s parental rights to A.S. in the Eighth Judicial District Court, Cascade County. The District Court granted the petition, and M.S. appeals. We affirm the judgment of the District Court.

¶2 We restate the sole issue on appeal as follows:

¶3 Was M.S. denied effective assistance of counsel?

## BACKGROUND

¶4 On June 14, 2001, DPHHS filed a petition for temporary legal custody of eleven-day-old A.S. DPHHS based its petition on drug screen tests taken shortly after A.S.'s birth in which M.S. tested positive for marijuana and A.S. tested positive for cocaine. Additionally, a search of M.S.'s home on June 12, 2001, yielded both drugs and drug paraphernalia.

¶5 The District Court granted DPHHS temporary legal custody of A S. on June 15, 2001, and scheduled a hearing on the matter for August 28, 2001. At the hearing, the District Court adjudicated A.S. a youth in need of care and extended DPHHS's temporary custody of A.S. for six months. The District Court also approved a treatment plan for M.S.

¶6 In the months following the hearing, M.S. failed to complete several portions of her treatment plan. In particular, M.S. neglected to maintain regular contact with the social worker handling her case, and to schedule visits with A.S. M.S. also failed to achieve a drug-free lifestyle. As a result of M. S.'s failure to comply with her treatment plan, the District Court ordered that DPHHS's custody of A.S. be extended for an additional six months on March 19, 2002. M.S. did not object to this extension.

2

¶7 DPHHS filed a permanency plan report for A.S. on April 12, 2002. The report stated that while M.S. had made some progress on her treatment plan in the first two months following A.S.'s removal, she made no effort to complete the plan in the months thereafter. The District Court conducted a hearing on the permanency plan on April 16, 2002. Based upon the testimony presented, and the fact that M.S. had not completed her treatment plan, the District Court determined that it would not be suitable for A.S. to be placed in the custody of M.S.

¶8 DPHHS filed a petition to terminate M.S.'s parental rights to A.S. on October 9, 2002. The District Court conducted a hearing on the petition on January 7, 2003. On January 21, 2003, the District Court issued findings of fact and conclusions of law, terminating M.S.'s parental rights to A.S. M.S. appealed on January 23, 2003.

## STANDARD OF REVIEW

¶9 Whether a person has been denied his or her right to due process is a question of constitutional law. Our review of questions of constitutional law is plenary. *Schmill v. Liberty Northwest Ins. Corp.*, 2003 MT 80, ¶ 9, 315 Mont. 51, ¶ 9, 67 P.3d 290, ¶ 9.

## DISCUSSION

¶10 Was M.S. denied effective assistance of counsel?

¶11 On appeal, M.S. alleges that she was denied effective assistance of counsel at the January 7, 2003, hearing on the termination of her parental rights to A.S. Specifically, M.S. asserts that because her court-appointed counsel failed to subpoena witnesses to testify on her behalf, she received ineffective assistance of counsel at the termination hearing.

¶12 It is well established in Montana's jurisprudence that a natural parent's right to the

care and custody of his or her child is a fundamental liberty interest which must be protected by fundamentally fair procedures. *Matter of A.S.A.* (1993), 258 Mont. 194, 197, 852 P.2d 127, 129 (citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753-54, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599, 606); *In re A.C.*, 2001 MT 126, ¶ 20, 305 Mont. 404, ¶ 20, 27 P.3d 960, ¶ 20. We have further concluded that when the State seeks to terminate a parent's liberty interest in the care and custody of his or her child, due process[1] requires that the parent not be placed at an unfair disadvantage during the termination proceedings. *A.S.A.*, 258 Mont. at 198, 852 P.2d at 129. Accordingly, we have held that fundamental fairness requires that a parent be represented by counsel at proceedings to terminate parental rights. *In re Custody of M.W.*, 2001 MT 78, ¶ 25, 305 Mont. 80, ¶ 25, 23 P.3d 206, ¶ 25; *In re A.F.-C.*, 2001 MT 283, ¶ 42, 307 Mont. 358, ¶ 42, 37 P.3d 724, ¶ 42.

¶13 However, while a parent's right to counsel at a termination proceeding is firmly established in Montana's jurisprudence, this Court has yet to address the issue of whether or not such counsel must be effective. Therefore, in order to consider the issue before us on appeal, we must first address the threshold question of whether M.S. was entitled to receive effective assistance of counsel at her termination proceeding.

¶14 Other jurisdictions have addressed this issue and concluded that parents have a due process right to effective assistance of counsel in termination proceedings. For example, in *V.F. v. State* (Alaska 1983), 666 P.2d 42, 46, the Alaska Supreme Court considered a situation in which a parent, whose parental rights had been terminated, maintained that she

---

[1] The Due Process Clause of the Montana Constitution provides that: "No person shall be deprived of life, liberty, or property without due process of law." Art. II, Sec. 17, Mont. Const.

received ineffective assistance of counsel because: (1) she was not aware that counsel had been appointed to represent her until shortly before the termination hearing; (2) her counsel failed to argue that the termination hearing should be governed by the Indian Child Welfare Act; and (3) her counsel failed to call a particular character witness to the stand. While the Alaska Supreme Court ultimately held that the parent was not denied effective assistance of counsel, it did so only after first determining that she had a right to receive counsel who was effective. *V.F.*, 666 P.2d at 44, 47-48. In particular, the Alaska court held that parents have a due process right to effective assistance of counsel in termination proceedings, as "the interest at stake is one of the most basic of all civil liberties, the right to direct the upbringing of one's child." *V.F.*, 666 P.2d at 45.

¶15 The Alaska Supreme Court's decision in *V.F.* was later echoed by the Supreme Court of Wisconsin in *In Interest of M.D.(S.)* (Wis. 1992), 485 N.W.2d 52, in which the court concluded that the right to counsel is worthless if it does not include the right to effective assistance of counsel. Additionally, appellate courts in both California and Utah have held that in termination proceedings, indigent parents are entitled to effective assistance of counsel. See *In re Darlice C.* (Cal. App. 2003), 129 Cal. Rptr. 2d 472 (holding that a parent, whose parental rights had been terminated, was entitled to review of her claims regarding ineffective assistance of counsel where counsel failed to advise the court of the "sibling relationship exception" to adoptability); and *State ex rel. R.H.* (Utah Ct. App. 2003), 71 P.3d 616 (holding that the juvenile court erred in not inquiring into a parent's request for new counsel when the parent's counsel failed to appear at a pretrial hearing).

¶16 Moreover, in *In re K.L.* (Tex. App. 2002), 91 S.W.3d 1, 12, the Court of Appeals of

5

Texas concluded that in order for the right to counsel in a termination proceeding to be meaningful under the due process clause, such counsel must be effective. While the court ultimately held that the parent had received effective assistance of counsel, the court emphasized the importance of effective assistance of counsel in termination proceedings. *K.L.*, 91 S.W.3d at 11, 17-18. Specifically, the court stated:

> In the absence of a right to effective assistance of counsel, a parent whose parental rights are erroneously terminated due to counsel's deficiencies has no meaningful remedy to cure such error. . . . Monetary damages are wholly inadequate in termination cases given the nature and severity of the interests involved. Thus, a claim for ineffective assistance of counsel is the only meaningful redress for a parent whose parental rights have been terminated in a proceeding where appointed counsel failed to render effective assistance. Granting a right to effective assistance of counsel would alleviate the possible risk that parental rights might be terminated due to the ineffective assistance of appointed counsel.

*K.L.*, 91 S.W.3d at 11.

¶17 Finally, this Court indirectly addressed the instant issue in *Kane v. Miller* (1993), 258 Mont. 182, 852 P.2d 130. In *Kane*, the District Court terminated a mother's parental rights to her son. The mother responded by filing a complaint against her court-appointed counsel, asserting that he had committed professional negligence. The attorney filed a motion for summary judgment on the complaint. The District Court granted the motion, and the mother appealed. *Kane*, 258 Mont. at 186, 852 P.2d at 133.

¶18 On appeal, we did not specifically address the issue of whether the mother had a right to effective assistance of counsel at the hearing terminating her parental rights. Rather, we evaluated her claim under the following standard, which was established to assess claims of legal malpractice:

> In order to establish a cause of action for legal malpractice there must be a

6

showing that the attorney owed his client a duty of care, that there was a breach of this duty by a failure to use reasonable care and skill, and that the breach was the proximate cause of the client's injury and resulted in damages.

*Kane*, 258 Mont. at 187, 852 P.2d at 133. Based upon this standard, we subsequently determined that she was unable to establish that her attorney had committed legal malpractice at her termination hearing. *Kane*, 258 Mont. at 189, 852 P.2d at 135.

¶19 As we noted above, *Kane* did not directly address the issue of whether a parent is entitled to effective assistance of counsel at his or her termination proceeding. However, by evaluating the adequacy of the mother's legal representation at her termination proceeding, this Court was implicitly stating that she was entitled to representation that was effective.

¶20 Indeed, it seems self-evident that the right to counsel carries with it a concomitant requirement that such counsel be effective. In the absence of effective, competent counsel, the right to counsel is reduced to nothing more than a procedural formality. That is, if there is no requirement that the counsel a parent receives be effective, then the mere act of appointing counsel is meaningless. In fact, parents who are denied effective assistance of counsel could actually be worse off than those who have no counsel, as the facade of being represented by counsel casts upon the proceedings a veneer of fairness and legitimacy that may not actually exist. Accordingly, we conclude that parents have a due process right to effective assistance of counsel in termination proceedings.

¶21 In light of our conclusion that parents have a right to effective assistance of counsel in termination proceedings, we must now determine the appropriate standard by which to gauge whether such counsel has provided effective assistance. In criminal cases, this Court evaluates claims of ineffective assistance of counsel by applying the two-prong test from

7

*Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The *Strickland* test requires the defendant to show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Dawson v. State*, 2000 MT 219, ¶ 20, 301 Mont. 135, ¶ 20, 10 P.3d 49, ¶ 20. This Court has further noted that: "Pursuant to *Strickland*, a defendant alleging ineffective assistance of counsel must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Dawson*, ¶ 20.

¶22    However, while the *Strickland* test is appropriate for criminal proceedings, we previously determined that it is not applicable to civil proceedings involving involuntary commitment in *In re Mental Health of K.G.F.*, 2001 MT 140, 306 Mont. 1, 29 P.3d 485. That is, we noted in *K.G.F.* that the *Strickland* test was adopted to protect defendants in criminal cases whose right to effective assistance of counsel flows from the Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution. *K.G.F.*, ¶¶ 22, 28. The appellant in *K.G.F.* was appealing her involuntary commitment to a mental health facility. *K.G.F.*, ¶¶ 15-16. Therefore, we concluded that it would be inappropriate to apply the *Strickland* test, as:

> Although in numerous respects the procedural due process rights of an involuntary commitment patient-respondent are identical to those afforded an accused criminal defendant, we disagree with [the appellant] . . . that the application of the *Strickland* standard is appropriate in involuntary civil commitment proceedings. We conclude that the standard under *Strickland* simply does not go far enough to protect the liberty interests of individuals, such as [the appellant], who may or may not have broken any law, but who, upon the expiration of a 90-day commitment, must indefinitely bear the badge of inferiority of a once 'involuntarily committed' person with a proven mental disorder.

*K.G.F.*, ¶ 33.

¶23    While the instant case is not an involuntary commitment proceeding, we note that, as in *K.G.F.*, the constitutional basis for the right to effective assistance of counsel in termination proceedings is the due process clause. We further note that this is yet another instance in which the *Strickland* standard does not go far enough to protect the liberty interests of individuals, who, in this case, stand to forever lose their fundamental right to parent their children. See *K.G.F.*, ¶ 33. Consequently, we decline to apply the *Strickland* test to claims of ineffective assistance of counsel arising out of termination proceedings.

¶24    We next consider the standard used to evaluate claims of legal malpractice, which this Court employed in *Kane* to assess a claim of ineffective assistance of counsel at a termination proceeding. *Kane*, 258 Mont. at 187, 852 P.2d at 133. The standard employed in *Kane* has been used by this Court in a variety of cases involving claims of legal malpractice. See for example *Hauschulz v. Michael Law Firm*, 2001 MT 160, ¶ 11, 306 Mont. 102, ¶ 11, 30 P.3d 357, ¶ 11; and *Merzlak v. Purcell* (1992), 252 Mont. 527, 529, 830 P.2d 1278, 1279. However, claims of ineffective assistance of counsel in termination proceedings present a unique situation involving a parent's fundamental right to parent his or her children. Thus, we decline to apply the general standard for legal malpractice, and elect instead to formulate a standard specifically tailored to the instant issue.

¶25    In order to determine the proper standard by which to gauge ineffective assistance of counsel claims in termination proceedings, we again turn to *K.G.F.* for guidance. In *K.G.F.*, we looked to the National Center for State Courts' Guidelines for Involuntary Civil Commitment, which articulated standards for counsel in involuntary mental health

9

commitment proceedings. *K.G.F.*, ¶ 70; NATIONAL CENTER FOR STATE COURTS' GUIDELINES FOR INVOLUNTARY CIVIL COMMITMENT, 10 MENTAL AND PHYSICAL DISABILITY LAW REPORTER, 409 through 514 (No. 5-1986). Based upon the Guidelines, we then defined five critical areas of representation, and commented on how attorneys could effectively represent clients in involuntary commitment proceedings with regard to those five areas. *K.G.F.*, ¶¶ 70-89.

¶26    While the above technique proved to be effective in *K.G.F.*, we elect to take a more direct approach in the case *sub judice*. That is, after a careful examination of the standards announced in *K.G.F.*, and the recommendations found in the Resource Guidelines for Improving Court Practice in Child Abuse and Neglect Cases, we conclude that the effectiveness of counsel in cases involving the termination of parental rights should be evaluated by the following non-exclusive factors:

> (1)  Training and experience. Specifically, whether counsel has experience and training in representing parents in matters and proceedings under Title 41, Chapter 3, Part 6, Montana Code Annotated, and whether counsel has a verifiably competent understanding of the statutory and case law involving Title 41, Chapter 3, Montana Code Annotated, and of termination proceedings brought under Title 41, Chapter 3, Part 6, Montana Code Annotated; and
>
> (2)  Advocacy. This inquiry includes whether counsel has adequately investigated the case; whether counsel has timely and sufficiently met with the parent and has researched the applicable law; whether counsel has prepared for the termination hearing by interviewing the State's witnesses and by discovering and reviewing documentary evidence that might be introduced; and whether counsel has demonstrated that he or she possesses trial skills, including making appropriate objections, producing evidence and calling and cross-examining witnesses and experts.

See NATIONAL COUNCIL OF JUVENILE AND FAMILY COURT JUDGES, RESOURCE GUIDELINES: IMPROVING COURT PRACTICE IN CHILD ABUSE & NEGLECT CASES, 22-23 (1995); and *K.G.F.*,

¶¶ 70-89.

¶27    The above factors represent benchmark, although nonexclusive, criteria for evaluating claims of ineffective assistance of counsel in termination proceedings. Certainly an experienced, seasoned trial lawyer may be highly effective in representing a client in a termination proceeding without prior experience or training referenced in factor (1). Such a lawyer may be fully capable of sufficiently acquainting himself or herself with Title 41 to effectively represent a client in the process. For younger, inexperienced lawyers, on the other hand, "second-seating," mentoring, continuing education courses and informal study are but a few ways to satisfy the criteria set forth in factor (1). In the final analysis, the trial bench must carefully inquire about the qualifications of counsel it appoints to represent indigent parties in these proceedings if there is any question regarding counsel's qualifications.

¶28    The criteria set forth in factor (2) seem self-evident. Indeed, one wonders how counsel can effectively represent a client without, for example, investigating the case, researching and understanding the law, meeting with the client, and assiduously advocating for the client at trial. Moreover, in the absence of competent, diligent and effective representation, necessary information regarding the parent/child relationship will not be presented to the court, and the trial judge will be inhibited in his or her ability to make an informed decision.

¶29    In the instant case, DPHHS filed a petition to terminate M.S.'s parental rights to A.S. on October 9, 2002. A hearing on the petition was scheduled for October 22, 2002. The record indicates that M.S.'s counsel was prepared to represent M.S. at the October 22, 2002,

hearing. However, when the hearing was later rescheduled for January 7, 2003, counsel was not prepared to go forward. That is, counsel confessed that because of his own "screw up," he did not have the January 7, 2003, hearing scheduled on his calendar. As such, he requested a continuance in order to re-subpoena the witnesses he had subpoenaed at the October hearing, to testify on M.S.'s behalf. Counsel also attempted to admit letters written by the missing witnesses. The District Court denied counsel's request for a continuance, and disallowed the letters as hearsay. The hearing then concluded as scheduled.

¶30    The above chronology of events suggests that counsel was not prepared to advocate for M.S. at the January 7, 2003, hearing. In fact, counsel admitted as much when he stated that his failure to prepare for such hearing was the result of his own scheduling error. Counsel did not perform his duty to zealously advocate for M.S. at the January 7, 2003, termination hearing, nor was such advocacy beyond his means, as he was prepared for the hearing in October of 2002. Therefore, we conclude that counsel did not effectively represent M.S. at her termination hearing.

¶31    Once this Court has determined, under the factors established above, that a parent was ineffectively represented by counsel at his or her termination proceeding, the final part of our analysis requires us to assess whether such parent suffered prejudice as a result of counsel's ineffectiveness.

¶32    Here, while M.S. asserts that she was prejudiced by counsel's failure to subpoena witnesses to testify on her behalf at the termination hearing, a careful review of the record reveals that is simply not the case. That is, the witnesses subpoenaed by counsel were slated to testify as to M.S.'s conduct during her pregnancy and *prior to* the time A.S. was removed

12

from her care. Although this testimony may have been relevant to M.S.'s case at one time, it was no longer relevant at the time of the termination hearing. Pursuant to § 41-3-609(1)(f), MCA (2001), a court may order the termination of the parent-child legal relationship in situations where the child is an adjudicated youth in need of care and both of the following exist: (1) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and (2) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. In this case, M.S. conceded that she failed to successfully complete her treatment plan. The District Court then found that the conduct rendering M.S. unfit to complete her treatment plan was unlikely to change within a reasonable time. M.S. does not dispute the District Court's finding on appeal. Accordingly, testimony regarding M.S.'s conduct during her pregnancy and prior to the time A.S. was removed from her care was irrelevant to the District Court's ultimate determination that the criteria in § 41-3-609(1)(f), MCA (2001), had been satisfied.

¶33    M.S. did not suffer prejudice as a result of counsel's failure to subpoena the witnesses in question. Consequently, although we conclude that counsel to M.S. did not provide effective assistance of counsel at her termination hearing, we conclude that M.S. did not suffer prejudice as a result of counsel's ineffectiveness. The decision of the District Court is therefore affirmed.

/S/ JIM REGNIER

We Concur:

13

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE