DA 22-0527

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 68N

IN THE MATTER OF:

S.L., B.L, and J.L.,

      Youths in Need of Care.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Dawson, Cause No. DN-18-7
Honorable Olivia C. Rieger, Presiding Judge

COUNSEL OF RECORD:

    For Appellant Mother:

    Meri K. Althauser, Forward Legal, PLLC, Missoula, Montana

    For Appellant Father:

    Robin Meguire, Attorney at Law, Great Falls, Montana

    For Appellee:

    Austin Knudsen, Montana Attorney General, Michael P. Dougherty, Assistant Attorney General, Helena, Montana

    Brett Irigoin, Dawson County Attorney, Cody Lensing, Deputy County Attorney, Glendive, Montana

Submitted on Briefs:  March 15, 2023

Decided:  April 18, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 S.L. (Mother) and T.L. (Father) appeal the Seventh Judicial District Court's termination of their parental rights to their three minor sons, S.L., B.L., and J.L.[1] Each parent raises various challenges, including insufficient evidence of a failure to complete their treatment plans and ineffective assistance of counsel. Upon review of the evidence presented at the final hearing and the attorneys' actions throughout the case, we affirm the termination of both parents' rights.

¶3 In December 2018, the Department of Public Health and Human Services, Child and Family Services Division, petitioned to remove immediately the three boys from their parents' care and to place them in State care. The Department had visited the family's home in Glendive after receiving complaints from community members, medical personnel, and school staff about the boys' hygiene, behavioral issues, and medical issues. The visit revealed extremely unsanitary conditions in the home. The Department also had

---

[1] Father appeals the termination as to S.L. only.

2

concerns that the parents were not administering properly the boys' prescription medications.

¶4 The District Court granted emergency removal, citing the unsafe home conditions, poor hygiene, and the parents' inability to meet the boys' medical and mental health needs. The court appointed attorneys from the public defender's office to represent Mother, Father, and the boys. S.L., the youngest, was placed in foster care in Glendive; B.L. and J.L. were placed eventually in State-contracted youth group care through the A.W.A.R.E. program. Two months after removal and with the parents' stipulation, the District Court granted temporary investigative authority and continued emergency protective services.

¶5 In June 2019, the parents stipulated that the three boys each were a "youth in need of care" due to neglect and that their out-of-home placements were appropriate. *See* § 41-3-102(35), MCA. Two months later, the court ordered treatment plans for both parents, requiring them, over the next six months, to participate in visitation, demonstrate insight into their children's needs for stability and consistency, implement skills from visitation supervisors, complete and follow the recommendations of a parenting assessment and a chemical dependency evaluation, secure financial support and safe housing, and maintain contact with the Department.

¶6 In December 2019, the court extended the State's temporary custody of the boys. In June 2020, the State filed a petition to terminate Mother's and Father's parental rights, alleging they failed to complete their treatment plans successfully. Following a mediated

extension of temporary State custody and withdrawal of the termination petition, the Department filed a second termination petition in September 2021.

¶7 The District Court commenced the termination hearing on January 12, 2022. The court continued the hearing for additional testimony the following day after Mother had a medical issue during an afternoon recess. Following several reassignments of counsel, the court completed the termination hearing on June 27 and 28, 2022. The following month, the court issued its 28-page decision, terminating both parents' rights and awarding permanent legal custody of the boys to the Department with the right to consent to adoption or guardianship.

¶8 To terminate parental rights after a child has been determined to be a youth in need of care, the Department must demonstrate clear and convincing evidence that (1) an appropriate and approved treatment plan has not been complied with by the parents or has not been successful; and (2) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA. We review for abuse of discretion a district court's termination of parental rights. *In re D.B.*, 2004 MT 371, ¶ 29, 325 Mont. 13, 103 P.3d 1026. We review a court's factual findings for clear error and its conclusions of law for correctness. *In re D.B.*, ¶ 30. A court's findings "will be clearly erroneous (1) when substantial evidence fails to support the district court's finding; (2) when the district court misapprehended the effect of the evidence; or (3) when, after reviewing the record, this Court has a definite and firm conviction that the district court made a mistake." *In re D.B.*, ¶ 30. When reviewing findings for clear error, we do

not look merely for evidence that could have supported the opposite conclusion of the trial court. We consider instead whether the trial court abused its wide discretion in weighing conflicting expert testimony and determining witness credibility. *In re A.K.*, 2015 MT 116, ¶ 31, 379 Mont. 41, 347 P.3d 711. We address separately each parent's arguments.

**Sufficiency of Evidence to Terminate Mother's Parental Rights**

¶9 Mother challenges the sufficiency of the Department's evidence to terminate her parental rights. Mother maintains that she provided evidence that she completed the plan's tasks—including attending all visits within reason, obtaining income and clean housing, maintaining contact with the Department, and completing therapy and other evaluations— and that her witnesses' testimony supported a conclusion that she could meet a minimum standard of parenting. She argues that the Department's criticism of her failure to internalize parenting lessons from the plan "went well beyond the scope of securing basic safety for [her sons.]"

¶10 The District Court concluded that the Department established by clear and convincing evidence that the Mother's treatment plan was not successful and that her unfitness to parent the boys was unlikely to change within a reasonable time. The District Court listened to many hours of witness testimony, which revealed information that both favored and contradicted a conclusion that Mother completed her treatment plan. In Mother's favor, various witnesses testified that she completed chemical dependency treatment, finished a ten-week parenting course and demonstrated one parenting concept she learned, was consistent with visitation, and could parent at a minimum safety level. On

5

the other hand, the neuropsychologist who completed Mother's parenting assessment testified that Mother did not understand or internalize the parenting techniques she had been taught, did not acknowledge to the boys that she had caused them harm, and was unable to meet the boys' needs. One visitation supervisor testified that Mother had not internalized parenting corrections. The Department caseworker assigned to the case for its entire nearly four-year duration testified that Mother, despite completing the majority of the plan's tasks, still could not meet the boys' needs.

¶11 The trial court did not abuse its discretion in weighing this competing testimony and reaching its conclusion that Mother did not complete her treatment plan successfully. We have held that when a parent goes through the motions of a treatment plan but is unable or unwilling to internalize the lessons and apply them, that parent has not complied sufficiently with the plan. *In re D.B.*, ¶ 43. The court here found that Mother did not internalize changes from the plan, making detailed findings in consideration of all testimony. Its findings were not clearly erroneous in light of the substantial credible evidence. We conclude that the court did not err when it found clear and convincing evidence to support terminating Mother's parental rights.

**Effectiveness of Mother's Counsel**

¶12 Mother was represented at first by public defender Ali Moulton. In September 2021, nearly three years into Moulton's representation, the court granted Moulton's motion to withdraw due to an irretrievable breakdown in communication. Public defender J.B. Wheatcroft was then assigned to represent Mother and did so for six months—from

October 2021 through April 2022, which included the first two days of the termination hearing. In April 2022, the public defender's office substituted Wheatcroft with Scott Pederson as Mother's counsel. Pederson represented Mother for the remainder of the termination proceedings, including the final two days of the continued termination hearing in June 2022.

¶13 Mother argues that her first two attorneys, Moulton and Wheatcroft, were ineffective; she raises no challenge to Pederson's representation. Mother contends that Moulton and Wheatcroft failed to point out to the court her progress in therapy and rehabilitation and failed to advocate for more visitation and unsupervised visits. Moulton and Wheatcroft, Mother argues, thus prejudiced her case because she was less able to demonstrate at the termination hearing her ability to parent at a minimum standard of care. Mother contends that Wheatcroft admitted on record at the termination hearing that he was not prepared and needed a continuance to review the treatment plan despite having had months to do so. Finally, Mother argues that both attorneys were waylaid by Father's attorney, Clare Belue, who made unwarranted demands and frivolous motions. Mother contends that Wheatcroft, following Belue's lead, wasted hours of her termination hearing pursuing Belue's theory that the Department relied on a misdiagnosis of Munchausen syndrome by proxy when Wheatcroft could have spent time on a better theory—that Mother had demonstrated her ability to provide a minimum standard of care.

¶14 We evaluate effectiveness of counsel in termination cases by considering: (1) counsel's experience and training in representing parents in child abuse and neglect

proceedings; and (2) the quality of counsel's advocacy. *In re A.S.*, 2004 MT 62, ¶ 26, 320 Mont. 268, 87 P.3d 408. If a parent was represented ineffectively, we assess whether that parent was prejudiced by such representation. *In re A.S.*, ¶ 31. Only prejudicial errors violate a parent's due process right to effective assistance of counsel. *In re A.S.*, ¶¶ 20, 31.

¶15 Mother does not challenge her attorneys' experience; she challenges only the quality of their advocacy. Upon review, we conclude that Moulton and Wheatcroft were not ineffective. Moulton served as Mother's attorney for almost three years, during which time she negotiated multiple extensions of temporary custody and the withdrawal of the Department's first termination petition. Wheatcroft did not request time to review the treatment plan; rather, late in the first day of the hearing, he suggested recessing overnight so he could consult with Mother about her treatment plan before cross-examining the caseworker. The court declined Wheatcroft's request but granted a brief recess. Wheatcroft went on to cross-examine the caseworker thoroughly, discussing and challenging the caseworker's representation of Mother's completion of various tasks such as maintaining contact with the Department, securing income, and completing a parenting assessment and chemical dependency evaluation.

¶16 To the extent that any one of her counsel's actions or inactions could be deemed ineffective, Mother has not demonstrated prejudice. The court terminated Mother's parental rights because of her inability to render adequate parental care due to her emotional, mental, and physical health. Mother has not demonstrated beyond speculation that requests for increased visitation, even if granted, would have changed the basis for the

court's decision. Moreover, the theory that Mother wanted to pursue at the termination hearing—that she could provide a minimum level of parenting—was pursued vigorously by Pederson during the final two days of the hearing in June 2022. We decline to reverse the court's termination of Mother's parental rights on her ineffective assistance claim.

**Jurisdiction to Terminate Father's Parental Rights**

¶17 Father argues that the District Court lacked subject-matter jurisdiction to terminate his rights to S.L. because Father did not sign the Department's initial fourteen-day voluntary plan placing the children out of the parents' home.[2]

¶18 To begin, subject-matter jurisdiction is not an issue in this case. Under the Montana Constitution, district courts have jurisdiction over all civil matters, including child abuse and neglect proceedings. Mont. Const. art. VII, § 4(1); *In re K.B.*, 2016 MT 73, ¶¶ 12-14, 383 Mont. 85, 368 P.3d 722. The District Court here thus had jurisdiction over this alleged neglect case. Had Father argued in the District Court that the Department did not comply with the law when it had Mother but not Father sign the voluntary out-of-home plan, the court could have considered it. *See K.B.*, ¶ 13 ("[C]onformity with the statute is unrelated to a court's authority to hear child abuse and neglect cases.").

---

[2] Father, without citation, also contends that the District Court did not have personal jurisdiction over him. Section 41-3-103(1)(c), MCA, however, states that district courts have jurisdiction over "a person who is alleged to have abused or neglected a youth who is in the state of Montana for any purpose." Given that his children were alleged to have been neglected and that he resided in Montana, the District Court had personal jurisdiction over Father. A voluntary plan, whether Father signed it or not, does not bear on the court's statutory jurisdiction.

¶19 On the merits, Father's argument that the unsigned out-of-home plan violated Department policy and his right to due process fails. On the day the out-of-home plan expired, the Department petitioned for continued emergency protective services and temporary investigative authority. Father, with representation, stipulated to this petition and did not challenge the out-of-home plan despite his opportunity to do so. *See In re C.B.*, 2019 MT 294, ¶ 18, 398 Mont. 176, 454 P.3d 1195 ("For a parent to establish a claim for violation of due process, he or she must demonstrate how the outcome would have been different had the alleged due process violation not occurred.").

**Effectiveness of Father's Counsel**

¶20 Father alternatively asserts that his first attorney, Brandon Hartford, was ineffective for stipulating to the Department's petition for temporary investigative authority as well as its later petition for adjudication of S.L. as a youth in need of care and temporary legal custody. Father maintains that Hartford should have contested these petitions and that he failed to explain to Father the legal effect of stipulation. Father, however, has not demonstrated that Hartford's failure to challenge these petitions was prejudicial. *See In re A.S.*, ¶ 31. Given the Department caseworker's detailed affidavit and the evidentiary standard required to grant the petitions, it is only speculative whether contesting the petitions would have been successful. Finally, Father's argument that there was no evidence of abuse or neglect on his part is unpersuasive. S.L. was adjudicated as a youth in need of care because he was determined to have been neglected under the parents' care.

Child abuse and neglect proceedings are not focused on any one parent—the focus is on the child. *In re K.B.*, ¶ 19.

**Consideration of Father's Expert Evidence**

¶21 Father argues that the District Court erroneously disregarded the testimony of his expert witness, Dr. Michael Bütz, when it found that Father did not complete his treatment plan and that the conditions rendering him unfit were unlikely to change in a reasonable amount of time. Father also briefly asserts that the Department produced insufficient evidence to terminate his parental rights.

¶22 As with Mother, the District Court heard conflicting testimony about Father. On the one hand, the Department called multiple witnesses who testified about Father's shortcomings on completion of the treatment plan. The Department caseworker testified that Father did not internalize the goals of the treatment plan. A visitation supervisor testified that Father did not follow through with parenting guidance. Two doctors who assessed Father and S.L. testified that Father lacked protective parenting capabilities. On the other hand, Father also called witnesses who testified in his favor. Dr. Bütz assessed Father and concluded that he could safely parent the children with continued support from the Department; Bütz also contested the assessment completed by one of the doctors called by the Department. Father's counselor testified that he could parent safely without assistance. Father's landlord testified to his ability to receive direction and feedback. Another visitation supervisor testified that she believed Father could provide minimally adequate parenting. And a chemical dependency specialist testified that Father had no

chemical dependency needs. But on cross-examination, Dr. Bütz and Father's counselor acknowledged that they had never seen Father with the children.

¶23 Determining witness credibility and weighing conflicting witness testimony in non-jury trials "is squarely within the province of the district court." *In re C.M.*, 2019 MT 227, ¶ 21, 397 Mont. 275, 449 P.3d 806. Father argues that the District Court failed to state why it credited the doctors the Department called over Father's witness, Dr. Bütz. The court made extensive factual findings that explicitly addressed Dr. Bütz's testimony; it was not required to make a specific finding on each contested piece of evidence. The District Court's findings and conclusions make plain that it did not accept Dr. Bütz's opinions in light of the contrary evidence. The court weighed all evidence and concluded that there was clear and convincing evidence that Father did not complete his treatment plan and, given the lengthy pendency of this case, that the conditions rendering Father unfit to parent were unlikely to be remedied in a reasonable time. We decline to reweigh the competing evidence that was before the District Court. *See In re A.K.*, ¶ 31.

**Consideration of a Guardianship & Cumulative Error**

¶24 Father argues that the District Court abused its discretion by not considering or ordering a guardianship for S.L., which would have allowed Father to maintain a relationship with S.L. At no point in the proceedings below, however, did Father request a guardianship in lieu of termination. If a district court finds that the statutory criteria supporting termination are met, it is not required to consider alternatives—let alone unrequested alternatives—prior to terminating parental rights. *In re A.B.*, 2020 MT 64,

¶ 38, 399 Mont. 219, 460 P.3d 405. The District Court did not abuse its discretion by not ordering a guardianship for S.L. on its own initiative.

¶25 Finally, Father argues that the alleged errors above aggregated to overall prejudice in his case under the cumulative error doctrine. Because we conclude that there was no error by the District Court and no error by Father's counsel beyond speculation, we decline to consider Father's cumulative error argument.

¶26 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. We affirm the District Court's termination of Mother's and Father's parental rights.


/S/ BETH BAKER

We Concur:


/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE