# FILED

January 6 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 14-0165

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2015 MT 6

IN THE MATTER OF:

B.J.T.H. and B.H.T.H.,

      Youths in Need of Care.

APPEAL FROM:   District Court of the Third Judicial District,
In and For the County of Anaconda-Deer Lodge, Cause Nos. DN 11-03, 11-04
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Koan Mercer, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

          Ben H. Krakowka, Deer Lodge County Attorney, Anaconda, Montana

               Submitted on Briefs:  December 3, 2014
                       Decided:  January 6, 2015

Filed:

_____
               Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 S.H.V.H. (Mother) appeals from the Judgment entered by the Third Judicial District Court, Anaconda-Deer Lodge County, finding that the Department of Public Health and Human Services (DPHHS) complied with the counseling provisions of § 42-2-409, MCA. We affirm.

¶2 Mother presents the following issues for review:

1. *Was there substantial evidence to support the District Court's finding that, prior to signing an affidavit relinquishing her parental rights, Mother received counseling required by § 42-2-409(1) and (2), MCA?*

2. *Did the counselor produce a written report in compliance with the provisions of § 42-2-409(4), MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Mother is the birth mother of twins, B.H.T.H. and B.J.T.H., born in July of 2009. On September 12, 2012, the District Court terminated Mother's parental rights to her children finding that Mother had executed a knowing and voluntary relinquishment of her rights after receiving counseling.[1] Mother appealed and raised the following issues: (1) Did the District Court err in denying Mother's request to discharge her court-appointed counsel; (2) Did the District Court err in accepting Mother's relinquishment; and (3) Did the District Court err in denying Mother's request to modify the treatment plan and stay the termination hearing. *In re B.J.T.H.*, ¶¶ 2-5. This Court affirmed on issues one and three, *B.J.T.H.*, ¶¶ 17, 22, but remanded the matter to the District Court for a determination of whether Mother had

---

[1] Father relinquished his parental rights on March 16, 2012. For a more complete recitation of facts, see *In re B.J.T.H.*, 2013 MT 366, 373 Mont. 85, 314 P.3d 911.

received the required relinquishment counseling or whether good cause existed to waive the requirement, *B.J.T.H.*, ¶ 20.

¶4 On January 22, 2014, the District Court conducted an evidentiary hearing to determine whether the counseling received by Mother satisfied the provisions of § 42-2-409(1) and (2), MCA. The State presented the testimony of Christy Ruckwardt, a permanency specialist with DPHHS, who provided counseling to Mother. Ruckwardt explained that relinquishment counseling is referred to as options counseling because she reviews with the birth parent the different options available regarding his or her child. Ruckwardt goes over how the parent is doing in his or her treatment plan, necessary services that must be in place before reunification, and long-term placement options, such as guardianship and adoption, if reunification is not an option. It is Ruckwardt's practice to provide the parent with a packet of documents that help explain the parent's options. Ruckwardt goes through these documents with the parent and has the parent initial a checklist indicating he or she has received the information and has been offered discussion with the counselor on each topic. The packet contains a sample affidavit in the event the parent chooses the relinquishment option, as well as other individualized exercises such as the "Ecomap," which the parent completes in order to identify persons who will provide support during the grieving process.

¶5 Mother's counseling with Ruckwardt occurred on July 16, 2012, two months before she signed an affidavit of relinquishment on September 5, 2012. The District Court determined that Ruckwardt "began the relinquishment counseling session with [Mother] at 10:00 a.m. and concluded the session four hours later at 2:00 p.m." The District Court

observed that during this time, Ruckwardt allowed Mother "to take short breaks . . . to have a cigarette and to use the restroom." These breaks "lasted 10 to 15 minutes, combined." Additionally, the District Court found that Mother "took a 45 minute break from her relinquishment counseling at 11:30 a.m. to attend a Foster Care Review being conducted down the hallway from the room in which she was receiving counseling." Mother resumed counseling at 12:15 p.m. The District Court concluded that Mother had received between three hours and three hours and fifteen minutes of counseling and that the three-hour minimum time requirement had been satisfied.

¶6  Ruckwardt testified that during options counseling with Mother, she used a document entitled "Checklist for Counseling Requirement for Relinquishment of Parental Rights." This document contains every topic required to be discussed as set forth in § 42-2-409(3)(a) through (j), MCA. Thus, in compliance with the counseling statute, Ruckwardt testified she offered Mother an explanation and opportunity to discuss the following topics set forth in § 42-2-409(3)(a) through (j), MCA:

> (a) adoption procedures and options that are available to a parent through the department or licensed child-placing agencies;
>
> (b) adoption procedures and options that are available to a parent through direct parental placement adoptions, including the right to an attorney and that legal expenses are an allowable expense that may be paid by a prospective adoptive parent as provided in 42-7-101 and 42-7-102;
>
> (c) the alternative of parenting rather than relinquishing the child for adoption;
>
> (d) the resources that are available to provide assistance or support for the parent and the child if the parent chooses not to relinquish the child;
>
> (e) the legal and personal effect and impact of terminating parental rights and of adoption;

4

(f) the options for contact and communication between the birth family and the adoptive family;

(g) postadoptive issues, including grief and loss, and the existence of a postadoptive counseling and support program;

(h) the reasons for and importance of providing accurate medical and social history information under 42-3-101;

(i) the operation of the confidential intermediary program; and

(j) the fact that the adoptee may be provided with a copy of the original birth certificate upon request after reaching 18 years of age, unless the birth parent has specifically requested in writing that the vital statistics bureau withhold release of the original birth certificate.

¶7 Mother indicated she had received the required counseling regarding these topics by placing her initials next to each topic on the "Checklist for Counseling Requirement for Relinquishment of Parental Rights." On a separate document entitled "Birth Mother's Statement of Counseling Received," Mother again acknowledged having been offered information and discussion on each topic by signing and dating her statement.

¶8 Mother also completed her own "Ecomap" in which she included the names of persons who could support her if she decided to relinquish her children. Ruckwardt discussed with Mother her relationship with each person and whether she could rely upon them for support. Finally, Ruckwardt had Mother write down the reasons why she might choose to relinquish and then placed these written statements in Mother's DPHHS file. Ruckwardt explained that by including these responses in a parent's file, she can assist the parent later if they choose to write a letter to the child which may then be placed in the adoption file.

¶9 Ruckwardt did not prepare anything in addition to the above-referenced documents until she was asked by counsel for DPHHS, following this Court's remand, to provide documentation of the counseling she provided Mother. The packet of documents that Ruckwardt used during her counseling session with Mother, together with a cover letter describing her counseling session with Mother, was forwarded to DPHHS in December of 2013.

## STANDARDS OF REVIEW

¶10 We review a district court's findings of fact in a parental termination case to determine whether the findings in question are clearly erroneous. *B.J.T.H.*, ¶ 14. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *B.J.T.H.*, ¶ 14. A court's conclusions of law in such a case are reviewed for correctness, and its decision to terminate parental rights is a discretionary ruling reviewed for an abuse of discretion. *B.J.T.H.*, ¶ 14.

## DISCUSSION

¶11 *1. Was there substantial evidence to support the District Court's finding that, prior to signing an affidavit relinquishing her parental rights, Mother received counseling required by § 42-2-409(1) and (2), MCA?*

¶12 A parent's right to the care and custody of a child represents a fundamental liberty interest, and consequently, the state must provide fundamentally fair procedures at all stages in the proceedings to terminate parental rights. *In re A.N.W.*, 2006 MT 42, ¶ 34, 331 Mont. 208, 130 P.3d 619. Proceedings involving the termination of the parent-child relationship

6

must meet due process requirements guaranteed by the Montana and United States Constitutions. *In re A.S.*, 2004 MT 62, ¶ 12, 320 Mont. 268, 87 P.3d 408. Fundamental fairness and due process require that a parent not be placed at an unfair disadvantage during termination proceedings. *A.S.*, ¶ 12; *In re A.R.*, 2004 MT 22, ¶ 11, 319 Mont. 340, 83 P.3d 1287; *In re A.S.A.*, 258 Mont. 194, 198, 852 P.2d 127, 129-30 (1993).

¶13 When the State seeks to terminate a parent's rights through a voluntary relinquishment, the parent's rights are protected, in part, through the statutory provisions contained in § 42-2-409, MCA. Counseling of the birth mother is required and counseling of "any other parent . . . involved in an adoptive placement . . . is encouraged." Section 42-2-409(1), MCA. Unless counseling is waived for good cause by a court, a minimum of three hours of counseling must be completed prior to execution of a relinquishment, or the relinquishment and consent to adopt is void. Section 42-2-409(2), MCA. The statute mandates that ten specific topics be "explained" to the birth mother, § 42-2-409(3), MCA, and that the counselor prepare a written report containing a description of the topics covered and the number of hours of counseling completed, § 42-2-409(4), MCA.

¶14 Mother asserts that her testimony and her calendar, which was introduced into evidence, reflect that she left counseling at 12:10 p.m. after the foster care review. Mother also testified that the counseling did not begin at 10:00 a.m., as Ruckwardt represented. Mother claims that she only spent five to ten minutes total with Ruckwardt in counseling and spoke of nothing substantive. For these reasons, Mother maintains that the District Court erred when it concluded that Mother had received three hours of counseling.

¶15 The State maintains the District Court's finding that Mother received at least three hours of counseling is supported by substantial evidence. Ruckwardt testified, and the District Court found, that the counseling session began at 10 a.m. on July 16, 2012, and lasted until 2 p.m. Ruckwardt's notations made on the various documents contained within the packet reflect this as well. Ruckwardt acknowledged that there were breaks taken within the counseling session, but that the overall length of the session nevertheless comprised, at a minimum, a three-hour timeframe.

¶16 We review the record with an appreciation that the credibility of witnesses and the weight to be given their testimony are determined by the trier of fact—in this case the trial judge. *State v. Aragon*, 2014 MT 89, ¶ 17, 374 Mont. 391, 321 P.3d 841 (quoting *State v. Hilgers*, 1999 MT 284, ¶ 12, 297 Mont. 23, 989 P.2d 866). We have long observed that the trial court is in the best position to evaluate the credibility and demeanor of the witnesses and their testimony. *Aragon*, ¶ 17 (quoting *Langford v. State*, 2013 MT 265, ¶ 17, 372 Mont. 14, 309 P.3d 993). Here, the District Court specifically found that Ruckwardt's testimony that she provided at least three hours of counseling was more credible than Mother's testimony that she did not receive the required counseling. The documentary evidence further suggests that a significantly greater amount of time than five to ten minutes, as Mother contends was provided, would be required to discuss the ten topics which Mother has acknowledged she addressed with Ruckwardt. The District Court's finding that three hours of counseling was provided was supported by substantial evidence, and its credibility determinations will not be disturbed on appeal.

¶17    The District Court further observed that, although the evidence indicated Mother received three hours of counseling, Ruckwardt offered to do additional counseling at a later date, which Mother refused.  The District Court thus found, in the alternative, that good cause existed to waive the three-hour requirement.  We conclude, however, that there was substantial evidence to support the District Court's finding that Mother received the requisite three hours of counseling and we therefore do not address the District Court's alternative finding that good cause existed to waive this requirement.

¶18    *2. Did the counselor produce a written report in compliance with the provisions of § 42-2-409(4), MCA?*

¶19    Section 42-2-409(4), MCA, requires that the counselor prepare a written report that meets the following requirements:

> The counselor shall prepare a written report containing a description of the topics covered and the number of hours of counseling.  The report must specifically include the counselor's opinion of whether or not the parent understood all of the issues and was capable of informed consent.  The report must, on request, be released to the person counseled, to the department, to an agency, or with the consent of the person counseled, to an attorney for the prospective adoptive parents.

Mother argues that the written report was never prepared.  She maintains that a letter drafted in generic and formulaic terms eighteen months after Mother challenged the State's satisfaction of the counseling requirement is insufficient.

¶20    The packet of documents used by Ruckwardt during the counseling session is clearly a method by which DPHHS and its counselors ensure that each topic required to be discussed pursuant to § 42-2-409(3), MCA, is specifically addressed in counseling.  Mother and Ruckwardt each made notations on the documents and Mother placed her initials next to

each topic indicating she had discussed the topic in counseling. Mother also acknowledged, in a separate statement, that she had received the counseling in the specific topic areas. Ruckwardt kept these documents in her file until counsel requested that they be released. When Ruckwardt was asked to provide documentation, presumably in preparation for the evidentiary hearing on January 22, 2014, she forwarded the documents to counsel with a cover letter which more completely organized and described her counseling session with Mother.

¶21 We agree with Mother that Ruckwardt's cover letter, composed 18 months after the fact, did not adequately comply with the provisions of § 42-2-409(4), MCA, regarding preparation of a written report. Although a letter containing a summary description may suffice as a "written report" under the statute, even when all the documents are construed together, Ruckwardt did not include the required statement of the "counselor's opinion of whether or not the parent understood all of the issues and was capable of informed consent." However, while we do not condone the procedure utilized by DPHHS in these proceedings, it is a deficiency that should not override the best interests of the children—particularly the children's interest in permanency. DPHHS was granted temporary legal custody over three years ago when the twins were less than two years old. The State represents that the children have been waiting for their adoption to be finalized for over two years. If there were any evidence which would suggest that Mother's relinquishment was not knowingly and voluntarily made, although undeniably painful, then we may be compelled to consider this reporting deficiency in a different light. However, the evidence presented at the hearing established that Mother received the required amount of counseling regarding all of the

10

necessary topics and that she was capable of making a knowing relinquishment of her parental rights. A deficiency in a reporting requirement regarding these observations and findings should not serve as a basis to set aside an otherwise valid relinquishment. As we have previously stated, "[i]n matters involving abused and neglected children we have consistently held that a district court may protect the children's best interest despite procedural error." *In re F.H.*, 266 Mont. 36, 39, 878 P.2d 890, 892 (1994); *see also In re Adoption of S.R.T.*, 2011 MT 219, ¶ 28, 362 Mont. 39, 260 P.3d 177; *In re J.C.*, 2008 MT 127, ¶ 43, 343 Mont. 30, 183 P.3d 22. In applying harmless error to dependency proceedings, we have recognized the "well established [principle] . . . that 'no civil case shall be reversed by reason of error which would have no significant impact upon the result; if there is no showing of substantial injustice, the error is harmless.'" *In re A.N.*, 2000 MT 35, ¶ 39, 298 Mont. 237, 995 P.2d 427 (quoting *Newbauer v. Hinebauch*, 1998 MT 115, ¶ 20, 288 Mont. 482, 958 P.2d 705). We therefore conclude that the deficiency in the reporting requirement is harmless in light of the evidence produced at the hearing demonstrating Mother received the required counseling on each topic and that her relinquishment was knowingly and voluntarily made.

## CONCLUSION

¶22    The Judgment of the District Court terminating the parent-child relationship between Mother and B.J.T.H. and B.H.T.H. is affirmed.

/S/ LAURIE McKINNON

We Concur:

11

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER