FILED

11/23/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0139

DA 21-0139

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 304N

IN THE MATTER OF:

A.S.,

     A Youth in Need of Care.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Sweet Grass, Cause No. DN 2019-1
Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Jennifer Dwyer, Avignone, Banick & Williams, Bozeman, Montana

     For Appellee:

          Austin Knudsen, Montana Attorney General, Jonathan M. Krauss, Assistant Attorney General, Helena, Montana

          Patrick N. Dringman, Sweet Grass County Attorney, Big Timber, Montana

Submitted on Briefs:  October 27, 2021

Decided:  November 23, 2021

Filed:

_____
            Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    L.E.S. (Father) appeals from the March 4, 2021 Order Terminating Parental Rights and Granting Permanent Legal Custody issued by the Sixth Judicial District Court, Sweet Grass County, which terminated his parental rights to his child A.S. (Child).  We affirm.

¶3    Child was born in 2012 and is the biological child of Father and K.W. (Mother). Child was first removed from Mother's care by the Montana Department of Public Health and Human Services, Child and Family Services Division (Department), in May 2013, at a time when Father was incarcerated at the WATCh program and unavailable to parent. Mother died of an overdose in Child's presence in 2014.  Child was subsequently removed from Father's care by the Department later in 2014 and 2015, but was returned to Father's care each time.

¶4    In March 2019, Father was arrested and incarcerated in the Lewis and Clark County Detention Center (LCDC).  As Father was in jail, Child was left in the care of Father's girlfriend, N.R.  On April 8, 2019, N.R. left Child at home to get alcohol and was arrested for DUI.  The camper Child was living in with N.R. was discovered to not have a working bathroom or running water and was full of open containers of alcohol.  After N.R.'s DUI

2

arrest, the Department removed Child once again on April 9, 2019. On April 17, 2019, the Department filed a Petition for Emergency Protective Services (EPS), Adjudication as Youth in Need of Care (YINC) and Temporary Legal Custody (TLC) based on Father's physical neglect "due to his incarceration and leaving [Child] with unsafe people who were excessively drinking alcohol." On April 18, 2019, the District Court granted EPS and set a show cause hearing for April 30, 2019, which was later continued to May 7, 2019.

¶5 At the May 7, 2019 show cause hearing, Father stipulated to TLC, with the condition the Department would get him a proposed treatment plan within two weeks, and he would be given an opportunity to work that treatment plan. By this time, Father had been released from LCDC and was living in Billings, while Child was in foster care in Belgrade. In accordance with Father's stipulation, Child was adjudicated a YINC and the Department was granted TLC. Father's treatment plan was approved by the court following a hearing on June 11, 2019. Father was arrested in August 2019, and remained in custody until October 2019. On November 14, 2019, the Department filed a petition for an extension of TLC to allow Father additional time to complete his treatment plan. The District Court held a hearing on the petition for extension of TLC on December 10, 2019. At that hearing, Child Protection Specialist (CPS) Kathi Ellison testified to delays in Father making progress on his treatment plan due to Father's arrest for methamphetamine possession in Gallatin County and Father's "substantial physical injuries" suffered when he fell off the back of a truck. Following the hearing, the District Court issued an Order Granting Extension of Temporary Legal Custody, which extended TLC until June 11, 2020, or until

3

further order of the court. Father was then arrested in Anaconda-Deer Lodge County in January 2020. On March 10, 2020, at a status hearing, the Department informed the District Court that Father was "substantially noncompliant" with his treatment plan and had ongoing criminal justice issues. The Department informed the court it would be pursuing permanency for Child and was considering either termination of Father's parental rights or a guardianship. In May 2020, Father was sentenced by the district court in Lewis and Clark County to ten years at the Montana State Prison (MSP), with six years suspended, for felony criminal endangerment.

¶6 Shortly thereafter, on June 11, 2020, the Department filed a petition to terminate Father's parental rights due to Father's failure to complete his treatment plan and his long-term incarceration. The termination hearing was continued twice before being set for November 10, 2020. On October 30, 2020, Father filed Respondent Father's Motion for Writ of Habeas Corpus and Transport Order, seeking a writ of habeas corpus and transport order which would allow him to be transferred from the custody of the Montana Department of Corrections (DOC) to the Sweet Grass County Sheriff's Office (SGCSO) for the termination hearing. The District Court continued the hearing until December 1, 2020, notified DOC of Father's writ application, and allowed DOC 15 days to object to the writ. When no objection was filed by DOC, the District Court issued its Writ of Habeas Corpus and Transport Order on November 19, 2020, ordering DOC to transfer Father to SGCSO custody for the termination hearing.

¶7     On November 30, 2020, the Department filed a Motion for Defendant [sic] to Appear via Video or, in the Alternative, to Continue, along with an affidavit from the Sweet Grass County Sheriff, Alan Ronneberg, seeking to have Father appear by video, rather than be transported by SGCSO, due to an outbreak of COVID-19 in Father's cellblock at MSP. Father objected to the State's motion. On November 30, 2020, the District Court issued an Order Vacating Writ of Habeas Corpus, rescinding its order for Father to be transported from MSP by SGCSO and allowing Father to request and be granted a continuance of the termination hearing for up to 60 days, but requiring Father to appear by video at the rescheduled hearing if the COVID-19 concerns had not been "substantially abated." Father appeared by video for the December 1, 2020 hearing, reiterated his objections to appearing by video for the termination hearing, and was granted a continuance. The termination hearing was ultimately rescheduled for February 23, 2021.

¶8     At the termination hearing, Father appeared by video from MSP. The District Court heard testimony from Father's supervising Probation and Parole Officer Jaimee Szlemko, CPS Ellison, and Father. Due to time constraints, the District Court had the parties submit written closing arguments after the termination hearing. On March 4, 2021, the District Court issued its Order Terminating Parental Rights and Granting Permanent Legal Custody, which found Father's conduct or condition rendering him unfit to parent was unlikely to change within a reasonable time and terminated Father's parental rights to Child. Father appeals, raising two issues which we restate as follows: (1) whether Father's right to due process was violated when he appeared by two-way video at the termination

5

hearing, and (2) whether the District Court abused its discretion when it terminated Father's parental rights.

¶9 "As a natural parent's right to care and custody of a child is a fundamental liberty interest which must be protected by fundamentally fair procedures, termination procedures must satisfy the Due Process Clause of the Fourteenth Amendment." *In re B.J.J.*, 2019 MT 129, ¶ 13, 396 Mont. 108, 443 P.3d 488 (citing *In re C.J.*, 2010 MT 179, ¶ 26, 357 Mont. 219, 237 P.3d 1282). Whether a parent has been denied his or her right to due process is a question of constitutional law, for which our review is plenary. *In re M.V.R.*, 2016 MT 309, ¶ 24, 385 Mont. 448, 384 P.3d 1058 (citing *In re A.S.*, 2004 MT 62, ¶ 9, 320 Mont. 268, 87 P.3d 408).

¶10 We begin by addressing Father's assertion his due process rights were violated when he appeared via two-way video from MSP, rather than in person, for his termination hearing. Father contends his appearance by video at the termination hearing, over his objection to not appearing in person, violated his right to due process. The State argues neither the Montana Constitution nor the abuse and neglect statutes guarantee a parent the right to appear in person, rather than by video, for a termination hearing.

¶11 "Fundamental fairness and due process require that a parent not be placed at an unfair disadvantage during termination proceedings." *In re K.B.*, 2019 MT 73, ¶ 11, 395 Mont. 213, 437 P.3d 1042 (quoting *In re B.J.T.H.*, 2015 MT 6, ¶ 12, 378 Mont. 14, 340 P.3d 557). "Key components of a fair proceeding are notice and an opportunity to be heard." *In re C.J.*, ¶ 27 (citation omitted). Due process is not a fixed concept but a flexible

6

doctrine which must be tailored to each situation to meet the needs and protect the interests of the parties involved and to establish a violation of due process a parent must demonstrate how the outcome would have been different had the alleged due process violation not occurred. *In re C.B.*, 2019 MT 294, ¶ 18, 398 Mont. 176, 454 P.3d 1195 (citations omitted).

¶12 After our plenary review of the record in this case, we conclude Father's due process rights were not violated by his appearance over video for the termination hearing. Indeed, the abuse and neglect statutes specifically provide for such an appearance: "[a] court may permit testimony by telephone, videoconference, or other audio or audiovisual means at any time in a proceeding pursuant to this chapter." Section 41-3-110, MCA. In addition to video appearances being allowed under the abuse and neglect statutes, during the ongoing COVID-19 pandemic, this Court repeatedly offered guidance to lower courts to "[c]ontinue using remote-hearing or telephonic hearings for cases," to help limit the number of persons present in the courthouse and courtroom and allow for social distancing. Memorandum from Mike McGrath, Chief Justice, Montana Supreme Court, to Montana District Court Judges et al. (May 22, 2020) (https://perma.cc/F79T-HY2N); *see also* Memorandum from Mike McGrath, Chief Justice, Montana Supreme Court, to Montana District Court Judges et al. (April 27, 2020) (https://perma.cc/S3C9-WEGK); Memorandum from Mike McGrath, Chief Justice, Montana Supreme Court, to Montana District Court Judges et al. (December 21, 2020) (https://perma.cc/L3EN-LFGV). Here, the District Court was informed Father's cellblock at MSP was experiencing an outbreak of COVID-19 and that the SGCSO was both concerned about the safety of its personnel

during Father's transport and could not provide adequate COVID-19 protocols or social distancing.

¶13 Father was not placed at an unfair disadvantage during his termination hearing. At the originally-scheduled December 1, 2020 hearing, Father was able to speak privately with his attorney over the video system prior to the hearing and the District Court informed Father it would grant additional opportunities for Father to confer privately with his attorney during the hearing (including before the cross-examination of witnesses) if requested. Father was then granted a continuance of 84 days to allow more communication with his attorney prior to the February 23, 2021 termination hearing. At that hearing, Father was able to appear and be heard, testifying at length about his relationship with Child, the progress he had made during his incarceration, and his plans for the future. Father was afforded a fundamentally fair procedure at his termination hearing and has not shown how the outcome would have been different if he had been allowed to appear in person, rather than by video, for the termination hearing. Accordingly, Father has not demonstrated a due process violation in this case. *In re C.B.*, ¶ 18.

¶14 We review a district court's determination to terminate parental rights for an abuse of discretion. *In re E.Y.R.*, 2019 MT 189, ¶ 21, 396 Mont. 515, 446 P.3d 1117. An abuse of discretion occurs when a district court acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *In re X.M.*, 2018 MT 264, ¶ 17, 393 Mont. 210, 429 P.3d 920 (citing *In re K.A.*, 2016 MT

27, ¶ 19, 382 Mont. 165, 365 P.3d 478). We review a district court's findings of fact for clear error and its conclusions of law for correctness. *In re M.V.R.*, ¶ 23.

¶15 Section 41-3-609(1)(f), MCA, protects a parent's fundamental right to the care and custody of a child in termination proceedings. *In re E.Y.R.*, ¶ 26. "Before the court may terminate the parent-child relationship of a YINC, the court must find by clear and convincing evidence that: (1) an appropriate court-approved treatment plan was not complied with by the parents or was not successful; and that (2) the conduct or condition of the parents rendering them unfit was unlikely to change within a reasonable time." *In re X.M.*, ¶ 18 (citing § 41-3-609(1)(f)(i), (ii), MCA). The Department is required to make "reasonable efforts . . . to reunify families that have been separated by the state." Section 41-3-423(1), MCA. "To meet its requirements to provide reasonable efforts, the Department must in good faith develop and implement treatment plans designed 'to preserve the parent-child relationship and the family unit' and must, in good faith, assist a parent in completing his treatment plan." *In re B.J.J.*, ¶ 22 (quoting *In re D.B.*, 2007 MT 246, ¶ 33, 339 Mont. 240, 168 P.3d 691) (internal footnote omitted). "[A] parent has an obligation to avail himself of services arranged or referred by the Department and engage with the Department to successfully complete his treatment plan." *In re B.J.J.*, ¶ 24 (collecting cases).

¶16 From our review of the record, we conclude the District Court's decision to terminate Father's parental rights was not an abuse of discretion. At the time of termination, Child had been in the custody of the Department for at least 15 of the most

recent 22 months—22 out of the last 22 months in this case—and termination of Father's parental rights was presumed to be in Child's best interests. Section 41-3-604(1), MCA. The Department's present involvement began after Father was arrested and left Child in the care of his girlfriend in a camper with no bathrooms or running water, who then got drunk, left Child home alone, and was arrested for DUI herself. After stipulating to the adjudication of Child as a YINC, Father signed a treatment plan which was approved by the District Court on June 12, 2019. One of the specific tasks for Father was that Father would "not be involved in any criminal activity." Less than two months later, Father was arrested on a probation violation for criminal possession of dangerous drugs. After spending approximately two months in custody, Father was again arrested on new charges in January 2020—two months after he was released. In May 2020, Father was sentenced to ten years at MSP, with six suspended, for felony criminal endangerment.

¶17 The District Court found Father had not completed the court-ordered treatment plan and the conduct or condition rendering him unfit to parent was unlikely to change within a reasonable time pursuant to § 41-3-609(1)(f), MCA. In determining whether the conduct or condition of a parent is unlikely to change within a reasonable time, the District Court was required to consider the "present judicially ordered long-term confinement of the parent." Section 41-3-609(2)(d), MCA. At the time of termination, the District Court noted Father was incarcerated at MSP on four separate criminal charges, including a methamphetamine possession case for which Father was arrested approximately two months after the treatment plan was imposed in this case. The court noted Father's prison

10

term expires in July 2024, and the earliest Father could become parole eligible was July 2, 2021. The court further noted once Father is discharged from MSP, he would likely be placed in a pre-release setting—such that upon release it would be at least several more months before Father could even be in a position to parent. Thus, even if the Department had done a better job of arranging, coordinating, and monitoring services for Father while he was incarcerated, his incarceration itself rendered him unable to parent within a reasonable period of time given Child's need for stability and permanence.

¶18 Father failed to complete his treatment plan due to a combination of his own decisions and communication issues with the Department which were compounded by his repeated incarcerations. While Father attempted to make progress on his treatment plan tasks at first, he was shortly thereafter arrested and incarcerated. By the time of the March 2020 status hearing, Father had pending criminal matters in three separate counties. CPS Ellison reported Father had not been in regular contact with either her or his probation officer. Father did not complete his treatment plan and given his prospects of long-term continued incarceration followed by several months of pre-release, the District Court correctly found Father's condition was unlikely to change within a reasonable time. Child had been in the custody of the Department for 22 of the 22 months preceding termination in this case and deserved stability. The District Court's decision to terminate Father's parental rights was not an abuse of discretion.

¶19 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶20     Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE