FILED

07/29/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0557

DA 24-0557

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 165N

IN THE MATTER OF:

N.J.,

A Youth in Need of Care.

APPEAL FROM:   District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DN-20-61
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Robin Meguire, Attorney at Law, Great Falls, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Brad Fjeldheim,
Assistant Attorney General, Helena, Montana

Matt Enrooth, Butte-Silver Bow County Attorney, Butte, Montana

Submitted on Briefs:  April 23, 2025

Decided:  July 29, 2025

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Mother appeals the Findings of Fact, Conclusions of Law and Order Terminating Parental Rights and Granting Permanent Legal Custody, Re: Birth Mother, issued on July 17, 2024, by the Second Judicial District Court, Butte-Silver Bow County. The issues on appeal are whether the District Court erred in terminating Mother's parental rights, whether a procedural error violated Mother's due process rights, and whether Mother received ineffective assistance of counsel (IAC).

¶3 The Department of Public Health and Human Services (the Department) removed Mother's child from her care on July 31, 2020, based on allegations of inappropriate touching between Mother's boyfriend and the child, Mother's alcohol abuse, and domestic violence between Mother and her boyfriend. The child's biological father is deceased. The District Court adjudicated the child a youth in need of care, and Mother stipulated to temporary legal custody (TLC) with the Department. The District Court approved a treatment plan for Mother which required a mental health and chemical dependency evaluation, participation in therapy, and improving her parenting skills.

¶4 After the child was placed in the Department's care, the Department reported Mother was having difficulties meeting her treatment plan requirements. The Department

2

was unsure whether her difficulties were because of a traumatic brain injury (TBI) she suffered as a teenager or her use of alcohol. Upon the expiration of the TLC, on November 16, 2021, Mother moved to have the child placed with her. The Department did not petition for an extension of TLC but rather filed for parental termination, and the court held a termination hearing. The Department argued Mother had not completed her treatment program for various reasons, including that Mother's presence in family therapy sessions was causing permanent trauma to the child, Mother disrupted therapy by verbally attacking the family therapist, Mother continued to provide positive and diluted urinary analysis tests, Mother resisted seeing providers suggested by the Department, and her continuing in a relationship with her boyfriend—despite the child's allegations of sexual abuse. The court set the termination hearing, but upon Mother's request continued it, so as to give Mother time to participate in relinquishment counseling.

¶5 After a series of intermediate delays, including Mother's refusal to sign a relinquishment after completing relinquishment counseling, Mother's withdrawal and appointment of new counsel, several status hearings, family engagement meetings, Mother's motion for finding a lack of reasonable efforts by the Department and expiration of TLC,[1] and a second petition for parental termination, the termination hearing was finally held on February 29, 2024. The Department testified Mother did not comply with her

---

[1] Mother argued the Department failed to make reasonable efforts to reunite her with her child. The Department admitted it had not made any efforts in the past 10 months to assist Mother with her mental health—namely because Mother refused to inform the Department who her therapist was, and she consistently refused to release her medical information to the Department. The District Court did not rule on the motion nor order an extension of TLC.

treatment plan. Although Mother did complete substance abuse counseling and obtain a mental health evaluation, the Department never received any medical records regarding her TBI. Mother did not sign a release for the psychologist who conducted her mental health evaluation to provide the evaluation to the Department. The child's therapist, Ms. Reynolds, testified that Mother could not meet the child's needs, and that reunification was not in the child's best interests. Dr. Silverman, Mother's psychological expert, who conducted both a psychological evaluation and parenting evaluation of Mother, testified Mother was not competent to raise a child on her own or without assistance, but without Mother's medical release, he could not go into specifics on her mental health evaluation. Mother testified she remained sober, had safe and stable housing by herself, and was working.

¶6 The District Court terminated Mother's parental rights on July 17, 2024. The court found Mother did not comply with her treatment plan and she was unlikely to change within a reasonable time. The court also found it was in the child's best interests to terminate Mother's parental rights. Mother appeals. More detailed facts will be discussed throughout as needed.

¶7 First, we examine whether the District Court erred in terminating Mother's parental rights. Mother asserts the Department failed to make reasonable efforts, including failing to hold family engagement meetings and not accommodating her TBI disability. The Department counters that it tried to help Mother complete her treatment plan, but Mother consistently failed to cooperate with the Department and did not meaningfully participate in therapy sessions designed to build her relationship with the child. Mother also failed to

4

release her medical records to the Department so that it could fully understand the extent of her TBI and design its treatment to fit her disability.

¶8     We review the factual findings in a district court's parental termination order for clear error, and its conclusions of law are reviewed de novo for correctness. *In re M.J.*, 2013 MT 60, ¶ 16, 369 Mont. 247, 296 P.3d 1197. The district court's "ultimate decision regarding adjudication and disposition" in a parental termination action is reviewed for an abuse of discretion. *In re M.J.*, ¶ 16. A court may terminate parental rights over a child adjudicated a youth in need of care if clear and convincing evidence establishes the parent did not comply with the approved treatment plan or the plan was not successful and the conduct or condition rendering the parent unfit is unlikely to change within a reasonable time. Section 41-3-609(1)(f), MCA.

¶9     Here, the District Court terminated Mother's parental rights based on her failure to complete her treatment plan and the unlikeliness of her conduct changing in a reasonable time. The record supports the District Court's decision. For example, the Department set up both individual therapy sessions for Mother and family therapy sessions for Mother and the child. Mother would not follow the therapist's parenting recommendations and often got into verbal disputes with the therapist. After family therapy sessions with Mother, the child expressed that she did not want to go back with her Mother, and the child would regress in her own individual sessions. The therapist eventually recommended it was in the child's best interest for Mother to no longer attend the family sessions. Mother also reportedly failed to attend some of her urinary analysis tests, and the Department suspected her of diluting her tests with water based on the dilute results. The Department also

5

testified that Mother's neighbors reported seeing her boyfriend frequenting her apartment despite Mother insisting she lived alone. Finally, the Department testified that Mother refused to see providers recommended by the Department, and she would quickly switch providers if they did not offer a favorable report of her. Mother refused to sign any medical releases which meant the Department could not keep track of her progress or discuss her treatment with her providers.

¶10    The District Court found Mother's conduct had not meaningfully changed in the three years since the Department's involvement, and it was therefore likely not going to change within a reasonable time. The Department had been involved with Mother and the child since September 15, 2020, and up to the date of the termination hearing in 2024, Mother had made no real progress nor expressed any willingness to change. Further, her own expert opined Mother was not competent to parent on her own. Based on the supporting evidence in the record, we agree.

¶11    The District Court also concluded it was in the child's best interest to terminate Mother's parental rights. This conclusion is also supported by the record. By the date of the termination hearing, the child was excelling in her placement, and she had quickly caught up in school. The therapist, Mother's psychologist, and the Department testified it was in the child's best interest to remain where she was and not return to Mother's care because after each interaction with Mother, the child would regress, and Mother had not improved her condition nor demonstrated that she could safely parent the child on her own. Accordingly, we find the District Court did not err in terminating Mother's parental rights.

¶12 Next, we consider Mother's due process claim. Mother asserts her due process rights were violated when TLC was extended nearly three years without a TLC extension hearing in violation of § 41-3-442, MCA. According to Mother, the District Court's failure to manage the TLC caused her prejudice by not allowing her to see her child for over two years which greatly harmed any prospects of reunification.

¶13 The Department argues Mother had notice of the Department's intention to permanently remove the child based on the numerous filings that occurred after the initial TLC extension. For example, the Department filed its termination petition, and the District Court held a termination hearing on December 22, 2021, in which Mother did not object to the extension or demand a TLC extension hearing. Rather, Mother requested the termination hearing be rescheduled so that she could pursue relinquishment counseling. Thus, according to the Department, Mother's due process rights were not violated.

¶14 Parental termination procedures must meet the requirements of the Due Process Clause of the Fourteenth Amendment. *In re B.J.T.H.*, 2015 MT 6, ¶ 12, 378 Mont. 14, 340 P.3d 557; *see Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24-25, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). While the concept of due process remains fluid, we have held that a parent has the right to be heard at a meaningful time and in a meaningful manner in a termination proceeding. *In re B.P.*, 2001 MT 219, ¶ 31, 306 Mont. 430, 35 P.3d 291. A natural parent's right to the care and custody of a child is a fundamental liberty interest, which courts must protect with fundamentally fair procedures at all stages of termination proceedings. *In re C.J.*, 2010 MT 179, ¶ 26, 357 Mont. 219, 237 P.3d 1282. On appeal, a parent must demonstrate the outcome of the proceedings would be different had the alleged

7

due process violation not occurred. *In re C.B.*, 2019 MT 294, ¶ 18, 398 Mont. 176, 454 P.3d 1195.

¶15 Section 41-3-442, MCA provides that TLC may not be in effect for longer than six months. Before the six months expires, the State must petition for an extension if it is necessary, and the court may continue the TLC after a hearing on the petition. Section 41-3-442(2), (4), MCA. If the statutory time limitations are not met, the court must review the reasons for the failure and order an appropriate remedy that serves the child's best interests. Section 41-3-442(7), MCA. The child's health and safety "are of paramount concern" when implementing the policy of this statute. Section 41-3-442(8), MCA.

¶16 Here, the District Court granted the first TLC on September 21, 2020. Mother stipulated to extend TLC for another six months on April 21, 2021. Then, the Department requested a continuance to file a petition to extend TLC on October 15, 2021. The court granted the continuance. For the next two years and nine months, the Department never filed a petition to extend TLC. However, the Department did file a parental termination petition shortly after the continuance on November 29, 2021, and the court held a termination hearing, that was later pushed back, on December 22, 2021.

¶17 With that in mind, Mother has not shown how the outcome would have been different absent a due process violation, or in this case, had the Department petitioned for TLC extension rather than parental termination. As the Department pointed out on appeal, Mother did not raise the issue of TLC extension at the termination hearing. Even so, had there been a hearing on whether TLC should have been extended, there is no evidence to suggest the outcome would have been different. The record shows that throughout the two

8

years and nine months the Department failed to petition for TLC extension, the Department continued providing services and support to Mother, and Mother failed to complete her treatment plan. Mother failed to follow parenting recommendations from the providers; her behavior during family therapy resulted in the child becoming afraid of Mother and discontinuation of the joint sessions; she had some positive and diluted urinary analysis tests; she was accepted into a drug treatment court but did not provide medical releases to the drug treatment court which prohibited her from participating; she did not obtain medical releases to allow the Department access to her medical history, mental health, therapy, and overall updates from her providers; and she had not maintained a safe home for her child due to her continuing a relationship with her boyfriend and his continued presence at her apartment.

¶18 While the Department did not procedurally adhere to the TLC statutory requirements of petitioning for TLC extension every six months,[2] Mother did not show how the outcome of the proceedings would have been different if the Department had followed the procedures. Mother did not follow her treatment plan which made it unlikely the District Court would return the child to her care, and Mother was on notice of the Department's intent to fully and permanently, rather than temporarily, remove the child from Mother's custody, yet she did not object to the lack of formal TLC extension. As such, Mother cannot establish a claim for violation of due process.

---

[2] Which we caution the Department to do to avoid potential for overturning its actions. Given the Department's tremendous authority and the importance of assuring child safety and preservation of the family, we expect the Department to diligently adhere to statutes and procedural requirements.

¶19 Finally, we consider Mother's IAC claim. Mother asserts she received IAC throughout the proceedings. Mother argues that three of her four appointed attorneys did not advocate for her rights. She claims her counsel urged her to seek relinquishment counseling instead of challenging the lack of TLC hearing. Mother claims that if there had been a TLC hearing, she could have presented evidence that challenged the therapist's testimony against her. Mother asserts this caused her prejudice of not being able to visit her child.

¶20 The Department counters that Mother has not established how she suffered prejudice. The Department argues Mother's four attorneys all faced the same challenge— that Mother failed to meaningfully engage in her treatment plan. According to the Department, Mother is focused on the TLC hearing, but fails to acknowledge that even if there was a hearing, the District Court would not have returned the child to her based on her lack of progress.

¶21 In termination proceedings, parents have a due process right to effective assistance of counsel. *In re K.B.*, 2016 MT 73, ¶ 16, 383 Mont. 85, 368 P.3d 722. "Ineffective assistance of counsel requires reversal only if the parent suffered prejudice." *In re K.B.*, ¶ 16 (citation omitted). Whether assistance was effective requires review of counsel's training, experience, and advocacy. *In re B.M.*, 2010 MT 114, ¶ 22, 356 Mont. 327, 233 P.3d 338.

¶22 Here, Mother does not challenge her counsel's training or experience but argues her counsel failed to effectively advocate for her rights. First, Mother claims her counsel was ineffective by not requesting an evidentiary hearing on Ms. Reynolds's bias towards her.

10

After reviewing the record, Mother presented no evidence showing Ms. Reynolds was biased against her. Rather, the record reflects that Mother consistently did not follow Ms. Reynolds's parenting recommendations which resulted in Mother's outbursts during sessions, the child's emotional regression, and the child's fear of Mother. We cannot fault counsel for not pursuing a claim without supporting evidence.

¶23 Second, Mother claims her counsel failed to object to the lack of TLC extensions. As discussed above, even if Mother's counsel had objected to the Department's failure to extend TLC, the result would have been the same. Mother's lack of meaningful progress made it unlikely the District Court would have returned the child to Mother's custody. It is quite possible counsel did not object as a tactic to provide Mother more time to improve her parenting abilities. Furthermore, Mother was aware of the Department's petition for parental termination and that a District Court would not return the child during the pendency of that petition. As such, Mother cannot establish she suffered prejudice as a result of counsel's failure to object to the lack of TLC extensions.

¶24 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶25 Affirmed.

/S/ INGRID GUSTAFSON

11

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE